**People of the State of Illinois, Plaintiff-Appellee, and Herbert Lang, et al., Petitioners-Intervenors-Appellants, v. Robert J. Thompson, et al., Defendants-Appellees.**

**Gen. No. 11,067.**

Fourth District.

November 18, 1968.

■■■■■■■■■■■■

Swain, Johnson & Gard, of Peoria (Jack C. Vieley, of counsel), for appellants.

Dunn, Dunn, Brady, Goebel, Ulbrich and Hayes, of Bloomington (William M. Goebel, of counsel), for appellees.

SMITH, P. J.
■ This is an appeal by five taxpayers and voters from an order of the circuit court denying them leave to intervene in a quo warranto proceeding after a judgment sustaining the validity of the district. The State's Attorney filed the original quo warranto proceeding. The defendants are members of the Board of Education of the newly organized district. The appellees filed their motion to dismiss the appeal accompanied by a supporting brief. Appellants answered. We set the motion for oral argument indicating questions we desired argued orally. Appellants filed their brief on the merits of this appeal. Since the appellants were not original parties to the quo warranto proceeding and are not parties now, the merits of that judgment are not before this court. Strader v. Board of Education of Community Unit School Dist. No. 1 of Coles County, 413 Ill 610, 110 NE2d 191. Indeed the notice to appeal in this case is specifically limited to the order denying the appellants leave to intervene in that court. We thus consider whether they have sufficient interest in the original quo warranto to intervene for purposes of appeal and whether or not the trial court abused his discretion in denying their petition.

The decree establishing the district was entered on January 8, 1968. While the State's Attorney's motion to vacate the original decree in quo warranto was pending, counsel for the appellants sought leave to be entered as additional counsel of record. After the State's Attorney indicated he might not appeal an adverse decision on his motion to vacate the original decree, appellants

105

sought leave to intervene for purpose of prosecuting an appeal. The motion for leave to be added as additional counsel was denied and the petition for leave to intervene was denied. It is conceded that the representation by the State's Attorney was adequate to the time when he indicated that no appeal would be taken.

It seems reasonably clear that unless someone has the authority to appeal the trial court's original decree, the organization of this new school district is an accomplished fact. Any doubt existing from previous decisions that the petitioners as taxpayers and voters have sufficient interest to present their petition for leave to intervene has been removed. People v. Firek, 5 Ill2d 317, 125 NE 2d 637. People ex rel. Henderson v. City of Bloomington, 38 Ill App2d 9, 186 NE2d 159. In Strader, after holding that the original decree was not before the court on a petition to intervene, the Supreme Court refused jurisdiction on direct appeal and transferred the case to the Appellate Court, 351 Ill App 438, 115 NE2d 539. In that court, it was held that a denial of a petition for leave to intervene where it was apparent from the record that further litigation would ensue was an abuse of discretion. In People ex rel. Boyington v. Northfield Tp. High School Dist. No. 225, 402 Ill 435, 84 NE2d 553, the petitioners, not original parties, after judgment filed a petition to intervene accompanied by a motion to vacate the judgment finding the district to be validly organized. It was held there that it was not an abuse of discretion to permit intervention.

In People v. Wood, 411 Ill 514, 104 NE2d 800, the Supreme Court was confronted with a motion by the State's Attorney to dismiss an appeal somewhat similar to the one that we review. In that case, the State's Attorney filed a proceeding in quo warranto to test the validity of a school district. The court found it to be legally organized. The State's Attorney elected to abide by that judgment and took no appeal. An underlying

school district involved in the decision filed notice of appeal and was the only appellant in the Supreme Court. It was not a party to the original action. The Supreme Court traced the history of the nature of quo warranto and its growth and development. The court recognized that at the time of its decision a writ of error provided a means of review under former practice to nonparties who could show that they were directly injured by the judgment. The court further recognized that the appellant in that case had an interest which in a certain sense was not common to every other member of the public. The court conceded that the denial of the right to appeal in that case might appear to be a technicality, but that actually it was based on sound, practical considerations. In so doing, the court stated in substance that the vesting of the power to institute, dismiss or appeal a quo warranto proceeding rests with the State where purely public rights are concerned, that it avoids the confusion and conflict which would occur if others could interfere at some stage of the proceeding or if control of the quo warranto remedy was to vest in other hands, and that these rules and principles which have evolved have the effect of avoiding conflicts and disputes between state officers and state entities, and that quo warranto actions are founded upon practical considerations which should not be lightly overturned. It further stated in substance that to permit the appeal in that case because of zealousness to insure review would be to let the right of appeal transcend the action sought to be reviewed at the cost of altering the substance and procedure of the action itself. Paragraph two of the present statute, Ill Rev Stats, c 112, ¶ 10, makes it abundantly clear that a citizen having an interest in the litigation is prohibited from instituting or maintaining quo warranto where the State's Attorney has instituted such a proceeding for the same purpose. An individual citizen or group of citizens with an interest may not maintain the action unless the State's Attorney

or Attorney General has refused to do so and then only with leave of court. We do not find any case where the principles stated in Wood have been superseded, modified or altered as to the control of a quo warranto proceeding instituted by the State's Attorney or Attorney General. It is not the province of this court to overrule it and if we could, we would not for reasons that follow.

The petitioners here say, however, that this actually deprives them of a right to appeal and the right to be heard in the reviewing court and that this is neither fair nor just. They point out that under chapter 110, § 26.1, Ill Rev Stats 1967, a person has the right to intervene in an action when "(b) . . . the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action." They suggest that this section is clearly applicable where, as here, the People have abandoned or refused to take an appeal and thus for the first time the representation of the petitioners is no longer adequate. In this context, representation wholly absent must be deemed inadequate. We do not think petitioners can be charged with undue delay or laches in seeking to intervene in this suit after it was begun. Until the refusal to appeal they were adequately represented. We would further observe that permitting these petitioners to intervene for purposes of appeal would not delay the ultimate determination of the quo warranto proceeding on the merits any longer than had the State's Attorney elected to prosecute an appeal.

These observations, however, do not with any degree of finality control our decision. In Wood we have observed that the control of litigation in quo warranto instituted by the State's Attorney or Attorney General reposes with that officer. Under Ill Rev Stats 1967, c 110, § 26.1, our legislature has preserved this control in ¶ (6) where it states that the trial court in allowing intervention may provide "that in other respects the ap-

plicant shall not interfere with the control of the litigation, as justice and the avoidance of undue delay may require." It seems to us that under this proviso even if the trial court had permitted intervention, the intervenors could not control the litigation unless justice required it. Justice requires a weighing of the interest sought to be protected by the intervenors with the public interest. Indeed in Firek the court points out that in the exercise of a judicial discretion on a petition for leave to file an information in quo warranto, the court may fully protect the rights of the public, and under some circumstances, where the public weal demands, refuse leave to file the information although the clear legal right of the intervenor is established. (Citing McPhail v. People ex rel. Lambert, 160 Ill 77, 43 NE 382.) In both Wood and in the Appellate Court decision in Strader, it is noted that sound practical considerations are necessarily involved.

In the case at bar, the record indicates that the organizational petition was filed August 5, 1966. The public hearing was conducted on September 15, 1966. On November 12, the organizational election was held. On November 15, the organizational election was canvassed and the tabulation shows 2,455 for and 672 against the organization of the new district. On January 21, 1967, a Board of Education was elected. On January 30, the organization meeting of the Board was held. On July 1, 1967, the new Board commenced the operation of the district and succeeded to the powers and duties of the Boards of Education of the five underlying community unit districts. The quo warranto proceeding was not instituted until December 27, 1967. No one questioned the validity of this district until some months after it had begun to function and after the underlying districts had ceased their functions. It is surely not debatable that the validity of a new municipal entity ought to be tested at the first possible moment. In Iowa, the instant petition

109

would have been barred, if not filed within six months. Swan Lake Consol. School Dist. v. Consolidated School Dist., 244 Iowa 1269, 58 NW2d 349. Michigan has a thirty-day statute. Fulton Township School Dist. v. School Dist. of Essex, 302 Mich 566, 5 NW2d 467. In this State, we are not aided by such a statute. We are aided, however, by the language of the Supreme Court in People ex rel. Lindsey v. Board of Education, 3 Ill2d 159, 168, 120 NE2d 887, where the Supreme Court observed "We can and do see, however, great potential harm to the public generally in permitting the State to challenge the legality of the organization of a municipality without regard to the passage of time. If a judgment of ouster can be entered at any time, however remote, for an irregularity in the organization of a municipality, and all the acts of its officers invalidated, the credit of the municipality generally may be so hampered that they will be unable to perform the public functions for which they are created." The Supreme Court referred to the Lindsey case in People ex rel. Jordan v. Village of Forest View, 21 Ill2d 384, 390, 172 NE2d 780, 784, and there stated that the Lindsey decision was not based on either the lapse of time or the acquiescence of the plaintiffs, but "rather, the fact that, during the period of delay and acquiescence certain action had been taken by the district and certain conditions had developed whereby great inconvenience and public detriment would result from a judgment of ouster. . . ."

In the light of these principles, the record shows that the new district took over all of the assets and liabilities of the underlying five districts on July 1, 1967, has hired a superintendent, teachers and other personnel, has levied taxes for the operation of the district, has assumed the ownership and operation of the transportation equipment, has secured an option on a site for a new building, has by election voted the funds for such a building, has incurred obligations for architects and engineers, has received a Federal grant for both elementary and second-

ary schools, that further applications are now pending, that the education of some 3,000 elementary and secondary students are involved, that the status of such students in graduating from an accredited high school as a condition precedent to the pursuit of a higher education is involved, and, in summary, the destruction of the new district would create a chaos comparable to Lindsey.

█ We further observe that the organization of the school district under the statute imposes a rigid time schedule for the creation of a new district. It seems to us reasonable diligence in testing corporate existence should be imposed upon prospective intervenors and that "justice" so requires. Appellants complain that the trial court did not pass on the issues raised as to the legality of the district, but assert that it held that "it is a valid district if the new administration takes office, begins to spend money, enters into contracts, levies taxes and plans for the construction of a multimillion dollar school building." Assuming, without deciding, the correctness of this conclusion, perhaps the trial court had Lindsey in mind. Appellants stated squarely to the trial court that they thought the State's Attorney had done a very fine job at the trial level. "However, our problem is simply . . . that he is not going to appeal." It seems therefore clear to us that there is no abuse of discretion to deny the petition for leave to intervene where such petition on its face suggests that the intervenor can only wind up in a dead-end street. It is a dead-end street for very practical reasons. The number of local governmental units now authorized under our statutes are many. The final and the effective determination that they do or do not exist as lawful corporate units should be determined as expeditiously as possible. This district was declared in existence on November 15, 1966. Its Board of Education was elected in January, 1967. The State's Attorney and these taxpayers sat supinely by until December, 1967. It is clear from this record that the State's Attorney did not move until the bonding company raised some

111

questions about imperfections in the organization of the district some eleven months after its organization. Quo warranto is standard procedure for removing such imperfections. Until the decree holding the organization of the district valid, these taxpayers did not move in court. They are now unhappy with the result. The State's Attorney, under whose sole control the proceeding was up to this point, has elected not to take an appeal. Someone has to make a decision to appeal or not to appeal. It was made by the one clothed with the power to make it. These taxpayers now seek to review, not only this right of the State's Attorney, but the decision of the court. Suppose that they were granted leave to intervene for the purpose of an appeal and in the process finally conclude that the trial court's decision was correct and abandon the appeal. Could five other taxpayers come in and say "Well, we've been happy until now, but we are now without representation in court. Since the State's Attorney decided not to appeal and our five colleagues have quit, we would like to intervene for the purpose of prosecuting an appeal" and so on ad infinitum. The legality or the illegality of the corporation's existence under such circumstances would be forever fluid. For the reasons stated in Wood and because of chaos comparable to that outlined in Lindsey, we hold that the trial court did not abuse his discretion in denying petitioners leave to intervene in this proceeding for the sole purpose of appeal. We do not imply that there may not be circumstances where it would be an abuse of discretion to deny intervention either before or after judgment in a quo warranto proceeding begun by the State's Attorney. It is sufficient to say that they are not here present. The judgment of the trial court is affirmed.

Affirmed.

TRAPP and CRAVEN, JJ., concur.