2 Ill. App.3d 970 (1971)
276 N.E.2d 13
THE CITY OF LOCKPORT, Plaintiff-Appellee,
v.
COUNTY BOARD OF SCHOOL TRUSTEES WILL COUNTY et al., Defendants-Appellees  (BRUCE D. CHEADLE et al., Intervening Petitioners-Appellants.)
No. 70-199.
Illinois Appellate Court  Third District.
November 30, 1971.
*971 Saxon & Niznik, of Plainfield, for appellants.
Herschbach, Tracy & Johnson, of Joliet, for appellees.
Reversed and remanded in part; appeal dismissed.
Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This cause involves two consolidated appeals from orders of the circuit court of Will County. Both actions were in fact prosecuted by taxpayer-property owners of the City of Lockport, Illinois (hereinafter referred to as Petitioners). The object of the actions was to prevent defendant School Trustees and School District (hereinafter referred to as Defendants) from dealing with the property, sometimes referred to as the Lockport Public Square, by sale or otherwise in any manner to change its character to anything other than so-called "public square property". The first case (Circuit Court No. W 69 G 2028E) was instituted in the name of the City of Lockport but was apparently financed by petitioners. We shall hereafter refer to this case as the "City of Lockport case". The other case (Circuit Court No. W 70 G 1474E) was instituted by petitioners in their own names after the circuit court had dismissed the City of Lockport case by an order which was adverse to the complaint of petitioners.
The complaint in the City of Lockport case, which was filed September 9, 1969, sought a declaratory judgment that title to the real property consisting of a square block designated on the Lockport city plat as a "Public Square", is vested in the City of Lockport. A school building stands on the property. The school is now closed. The complaint sought a finding that defendants (the trustees and the school district) had no right to sell such property to third parties and that an injunction precluding such sale should be issued by the court. Defendant, in response to the complaint, filed a motion to dismiss under Section 48 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110 par. 48). The motion was ultimately allowed by the circuit court of Will County on *972 May 25, 1970. It is shown in the record that the Lockport City Council, on June 1, 1970, adopted a resolution to take no further action in the case instituted in the name of the City of Lockport. On June 23, 1970, within thirty (30) days of the order of dismissal, petitioners filed a petition for leave to substitute themselves as parties-plaintiff in place of the City of Lockport, and for leave to file a motion for a rehearing of the motion to dismiss on the basis of after-discovered evidence. Petitioners likewise requested consolidation of the City of Lockport case with the subsequent case filed by the petitioners. In the verified petition it is alleged, among other things, that the City Council of the City of Lockport "* * * has directed that the proceedings in this cause be terminated, but that the above-named taxpayers (Petitioners) wish to prosecute their case in Cause No. W 70 G 1474E without being prejudiced by any order previously entered in Cause No. W 69 G 2028E". On October 5, 1970, the circuit court of Will County entered its order denying the petition for substitution and for other relief. That cause is now on appeal from such order.
The complaint in the case filed separately in the names of the taxpayers also sought a declaratory judgment. In one count it sought to protect petitioners' "private property interests" in the Lockport Public Square, and in another count, it sought, on behalf of the petitioners as taxpayers, to quiet title to the property in question in the City of Lockport. This complaint was also dismissed pursuant to defendant's motion on January 14, 1971, ostensibly on the basis that the court's order of dismissal in the prior City of Lockport case was res adjudicata as to matters sought to be raised in the case filed in the names of Petitioners.
 1 Counsel for the respective parties to these appeals have raised substantive questions as to the status of title to the Lockport Public Square. We note, however, that the order appealed from in the City of Lockport case denied petitioners the right to intervene in the lawsuit as parties-plaintiff, and it is, therefore, clear that the merits of the questions are not yet before this court (Strader v. Board of Education, etc., 413 Ill. 610, 110 N.E.2d 191; People v. Thompson, 101 Ill. App.2d 104, 242 N.E.2d 49). Accordingly, we express no opinion as to the merits of the question of title to the public square. We have concluded that the only issues presently before us are, whether the trial court's order denying petitioners' leave to substitute themselves as parties-plaintiff in the City of Lockport case was proper, and, if not, whether the trial court abused its discretion in refusing to grant petitioners' motion for leave to file a request for rehearing in opposition to defendants' motion to dismiss previously allowed. Our determination of these questions, as shown in the body of this opinion, renders unnecessary a ruling *973 on the trial court's action in the subsequent case filed by the petitioners individually.
The right of petitioners to substitute themselves, for the original plaintiff-City of Lockport, as parties-plaintiff in the City of Lockport case, and thus to intervene in the lawsuit, is governed by section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110 par. 26.1). The pertinent part of the Section provides:
"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: * * *
(b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action; * * *
(6) An intervenor shall have all the rights of an original party, except that the court may in its order allowing intervention, whether discretionary or a matter of right, provide that the applicant shall be bound by orders, judgments or decrees theretofore entered or by evidence theretofore received, that the applicant shall not raise issues which might more properly have been raised at an earlier stage of the proceeding, that the applicant shall not raise new issues or add new parties, or that in other respects the applicant shall not interfere with the control of the litigation, as justice and the avoidance of undue delay may require."
Defendants contend that the trial court acted properly in refusing the requested substitution and intervention on the ground that the motion therefor was not timely. (Childress v. State Farm Mutual Auto Ins. Co., 97 Ill. App.2d 112, 122, 239 N.E.2d 492, 497). Defendants also contend that since petitioners elected in the first instance to assert their rights through the City of Lockport, they are in no position to come in later and object to the City's determination not to appeal the allowance of defendants' motion to dismiss. We do not agree with such contentions.
It is apparent that at the time the complaint in the City of Lockport case was filed, the petitioners reasonably believed that the only manner in which the claimed rights of the public to the property in question could be protected, was through litigation nominally brought by the City. This procedure was appropriate, because in Droste v. Kerner, 34 Ill.2d 495, 217 N.E.2d 73, which was the precedent then to be followed in such cases at such time, a taxpayer or property owner, in absence of statute, had no individual standing in equity to enjoin an alleged misuse of property held in a public trust, unless he could show that he would suffer special damage different in kind and degree than that allegedly suffered by the public at large. On September 29, 1970, this principle *974 was overruled in Paepcke v. Public Building Commission of Chicago, 46 Ill.2d 330, 263 N.E.2d 11. Petitioners, therefore, can hardly be penalized for originally seeking to protect the rights of the taxpayers and property owners in the only manner which was then apparently available as a result of Droste v. Kerner, supra. We likewise do not believe that the existence of the statute (Ill. Rev. Stat. 1969, ch. 24 par. 1-5-1) permitting taxpayers to bring suit against any person for recovery of money or property belonging to a municipality, presented petitioners with a viable procedural alternative at the time the original suit was filed in this cause. The statute referred to specifically directs that such actions are to be brought in the name of the municipality, and if, as here, the municipality is willing to prosecute the case at the outset, there was no reason for petitioners to seek recourse specifically under that statute.
 2, 3 During the period of time, therefore, that the City was nominally prosecuting the case, the rights of petitioners were amply protected, and only when the City determined to withdraw from further prosecution of the case, did petitioners properly deem it necessary to seek to substitute themselves as parties-plaintiff in place of the City. We note that after entry of the order of dismissal on May 25, 1970, the City decided not to litigate further on June 1, 1970. Petitioners filed their motion for substitution on June 23, 1970, only 22 days after the City had declined to proceed. Under such circumstances, we do not believe that petitioners could validly be charged with laches or undue delay in asserting their individual rights as taxpayers or property owners in seeking substitution and intervention in the cause, for the reason that until that time their rights as well as those of the general public were adequately represented (see People v. Thompson, 101 Ill. App.2d 104, 242 N.E.2d 49, 51.) We, therefore, conclude that the trial court was wrong in holding that petitioners' motion for substitution was untimely. We feel, also, that, under the clear mandate of Section 26.1(6) of the Civil Practice Act quoted above, petitioners were entitled to intervene in the lawsuit as a matter of right at such time.
We note that in subparagraph (6) of the same section of the Civil Practice Act, even in cases where intervention must be allowed as a matter of right, the court may provide certain limitations upon the intervening parties in its order allowing intervention as justice and the avoidance of undue delay may require. In People v. Thompson, supra, the Appellate Court relied upon this section in upholding the lower court's order precluding intervention in a quo warranto proceeding by individual taxpayers seeking to question the legality of the creation of a school district. The court in that case concluded that even if the trial *975 court had allowed intervention, justice would have required a decision on the merits as against the taxpayers, largely for the reason that too long a period of time had elapsed between the creation of the school district and the inception of the quo warranto proceeding seeking to challenge the legality of its existence. The new district had become operative, had hired personnel, had levied taxes, and the formerly existing partially adjoining school districts had been dissolved. The Appellate Court there felt that it would have been futile to allow the taxpayers the right to intervene in an action which necessarily would ultimately have been decided adversely to their position. We cannot say that such would clearly be the case in the action before us. Evidence in the record here discloses that the property in question has been used contemporaneously as a public square and for school purposes for decades at the time this suit was begun, and only when it was indicated that defendants were contemplating the sale of the property to third parties, and thereby asserting their right to do so, did the problem as to the title actually become apparent to the petitioners. There seemed to be no practical need for the institution of a lawsuit seeking a judicial determination of the title to the real estate until the ownership question as between the city and defendants was raised by the proposed actions of defendants. It was only at that time that the character of the property (as viewed by petitioners) was sought to be changed by defendants from a use by the school district to a contemplated sale to private third parties.
 4 Defendants' opposition to the right of petitioners to be substituted as parties-plaintiff in the City of Lockport action, was also to the effect that, in any event, petitioners are estopped from asserting the claimed rights of the City of Lockport in the property in question because of long acquiescence and delay in questioning the rights of the defendants to the property in question. Defendants rely principally upon Hickey v. Illinois Central Railroad Co., 35 Ill.2d 427, 220 N.E.2d 415, where the doctrine of estoppel was reluctantly applied by the Supreme Court of this State against the State and City of Chicago, and thus prevented them from contesting the right of the Illinois Central Railroad in and to the fee in substantial portions of Chicago lakefront property. It was shown, however, in that case, that over a period of more than 50 years all government entities involved had consistently and by overt action disclaimed any interest in the property in question, and continuously acted as if the fee were held by the railroad. In the instant case, if petitioners' documentary evidence is to be believed, the City of Lockport, with some insignificant exceptions, treated the property as permissively used by the school districts for school purposes. The record also shows that the property was contemporaneously used over the *976 years for those purposes befitting a public square and that such use was not inconsistent with the claim of the City to ownership of the property, subject to the rights of the school districts for use for school purposes. As the Supreme Court has stated with reference to the estopped doctrine in Melin v. Community Consolidated School District, 312 Ill. 376, 385:
"But in order to apply this doctrine there must clearly appear to be an abandonment by the municipality or public and an adverse holding by the school district. In this case there has been a continued occupancy and use of the land by the school district for more than sixty years, but there is no showing that this use was adverse to the claims of the public. As a matter of fact, the land enclosed for school purposes has for many years also had upon it a band-stand and a speaker's stand, and apparently the portion of the public square used for school purposes has at the same time been used for the general purposes to which a public square might be put * * *."
It is noted that the extraordinary acquiescence by a governmental body in disclaiming any interest in property as to which it may have some rights is not present in the instant case as it was in the Hickey case, and, therefore, the precedent is not applicable to the facts in the instant case. We also note that petitioners are not seeking to prevent defendants from continued use of the property under consideration for school purposes, but only desire to prevent a sale to private third parties for use inconsistent with what is referred to as a public trust. Since this is the situation, the cases which apply estoppel as against parties seeking to enjoin long existing uses of certain properties are similarly not controlling here e.g., Hoskins v. Chicago Park District, 380 Ill. 78, 43 N.E.2d 546; Carstens v. City of Wood River, 344 Ill. 319, 176 N.E. 266; Chicago R.I. and Pacific Railroad Co. v. City of Joliet, 79 Ill. 25.
If, in fact, title to this property is vested in the City of Lockport, it may truly be "public trust" property, and the interest of the public requires, under the Supreme Court decision in the Paepcke case, supra, that these petitioners have their day in court with respect to its disposition. As stated in the Paepcke case (at page 341):
"If the `public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time."
We conclude that the trial court erred in refusing substitution and intervention by petitioners in the City of Lockport case.
 5 Since we have determined that the court erred in refusing substitution *977 and intervention, the question further raised is whether the court abused its discretion in refusing to allow that portion of petitioners' motion requesting leave to file a motion for rehearing in opposition to defendants' motion to dismiss the amended complaint. From the briefs on file in this cause and the record submitted, it is apparent that the question of legal title to the property involved is quite complex, and has necessarily involved and will further involve a substantial expenditure of time and effort in bringing all available relevant materials before the court. The land was originally acquired in fee by the State of Illinois through an 1827 Act of Congress whereby certain canal lands were granted to the State by the Federal Government (Werling v. Ingersoll 1901, 181 U.S. 131, 45 L.Ed. 782). Documentary History of the Illinois and Michigan Canal issued by the Department of Public Works (1956, page 22) and devolution of title to the property from that time on is a matter of serious dispute, upon which reasonable men may clearly differ. The compilation of documentary evidence as to the chain of title is at best a time-consuming task. At the time the circuit court entered its order dismissing the amended complaint in the City of Lockport case, much relevant material and facts were not before it. Acquisition of this information, it is represented to this Court, involved the search of Lockport newspapers from approximately 1890 to the present; search of records of the Illinois-Michigan Canal reposing in the Archives of the State of Illinois at Springfield; as well as the relevant corporate minutes of the City of Lockport from 1857 until 1960. Initial arguments on defendants' motion to dismiss were heard by the trial court on March 23, 1970, when defendants were given an additional 21 days to file affidavits and documents in support of their motion. These items were filed on April 3, 1970, and petitioners thereupon began their search, as indicated above, for materials or evidence controverting defendants' documents. Prior to the time these materials were presented to the court by petitioners, and while the motion to dismiss was then under advisement, the May 25, 1970 order of dismissal was entered.
We agree that the evidentiary material proposed to be submitted to the court in connection with the request for rehearing on the motion to dismiss were necessarily in existence prior to the time the order for dismissal was entered and, thus, do not constitute new evidence not in existence prior to the entry of such order. We do not, however, believe that petitioners did not exercise due diligence in obtaining such evidence. It was obtained and petitioners sought to present it to the court by June 23, 1970, less than 30 days subsequent to the order of dismissal. The manifest public importance of the substantive questions involved in the case makes it, in our judgment, indispensable for all *978 parties concerned herein that a determination on the merits of the case be entered only after all available evidence has been presented to and considered by the court. The taxpayers seek to protect what they contend is a public trust, and, if they have been diligent in pursuing their object (as we believe the record indicates in this case) they should not be presented from having the court decide a question of such substantial public importance without having ample opportunity to present their case. Therefore, under the unusual circumstances of this case, we believe that the ends of justice require that we rule that the trial court improperly denied the request of petitioners for a hearing on the motion to dismiss.
We, therefore, conclude that the order of dismissal entered in the City of Lockport case (W 69 G 2028E) should be and is hereby reversed and that cause is remanded with directions to the court to enter an order allowing petitioners the right to intervene in the cause, and the court is further directed to grant petitioners leave to file their motion for rehearing in opposition to defendants' motion to dismiss and for further proceedings consistent with this opinion. The companion case filed by petitioners as individuals (W 70 G 1474E) becomes surplusage, in view of our determination, and the appeal in such case is dismissed as being moot.
Cause designated in the Circuit Court of Will County as W 69 G 2028E is reversed and remanded with directions.
Appeal in cause W 70 G 1474E is dismissed.
STOUDER and SCOTT, JJ., concur.