*In re* MARRIAGE OF TERRY RAY PERKINSON, Petitioner, and BILLIE JEAN PERKINSON, Respondent-Appellee (Mid-America Transportation Company, Intervenor-Appellant).

Fourth District   No. 4—86—0070

Opinion filed September 24, 1986.

GREEN, J., specially concurring.

Thomas R. Jayne and Bruce E. Beard, both of Thompson & Mitchell, of Belleville, for appellant.

Howard Lee White, of Schwarz, Self, White, Emons & McDonald, of Jerseyville, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Intervenor, Mid-America Transportation Company (Mid-America), appeals from the denial of its petition for intervention and from an order setting aside a judgment of dissolution of marriage.

At the onset we note that Mid-America's motion to supplement the record on appeal is allowed pursuant to Supreme Court Rule 366(a)(3) (87 Ill. 2d R. 366 (a)(3)).

The pertinent facts are as follows. Petitioner, Terry Ray Perkinson, and respondent, Billie Jean Perkinson, were married on October 23, 1976. Two children were born of this marriage.

On December 28, 1984, petitioner filed a petition for dissolution of marriage in the circuit court of Calhoun County. Grounds for the dissolution were alleged as follows: "that without fault or provocation on the part of the petitioner, the respondent has been guilty of extreme and repeated mental cruelty." On May 3, 1985, a hearing was held on the petition for dissolution of marriage. Respondent failed to personally appear. In general, petitioner's testimony concerned respondent's drug habit, her misuse of his wages, and her poor care of the children. After a hearing, the trial court entered an order which stated that petitioner "has grounds for the dissolution of marriage and the marriage is dissolved."

On May 14, 1985, a hearing was held on remaining issues of child

custody, visitation, division of property, and maintenance. By agreement of the parties, petitioner was awarded permanent custody of the minor children and respondent agreed to quitclaim her interest in the marital residence to petitioner. The terms of this agreement were subsequently incorporated with the previous order of dissolution, resulting in a final written judgment of dissolution, which was entered June 7, 1985. This judgment stated the following grounds for dissolution: "without fault or provocation on the part of the petitioner the respondent has been guilty of extreme and repeated mental cruelty."

Then on June 24, 1985, petitioner drowned while working as a deckhand on board a tug owned by Mid-America Transportation Company.

On July 1, 1985, respondent filed petitions to set aside the judgment of dissolution of marriage and for custody of the minor children. That day, an order was entered, awarding respondent temporary custody of the children. On July 11, 1985, Theresa Perkinson, petitioner's sister, filed an answer to the petition to set aside the judgment of dissolution and a petition for custody of the children. Following a hearing on September 12, 1985, the trial court found that Theresa Perkinson did not have standing to participate in the cause of action.

On October 24, 1985, the trial court appointed Theresa Perkinson's attorney as special administrator for the sole purpose of defending against the petition to set aside judgment of dissolution. A hearing was then held on the petition. Subsequently, on December 30, 1985, the trial court entered an order setting aside the judgment of dissolution, which stated: "the court upon reflection finds that the Petitioner Terry Ray Perkinson failed to prove the grounds of repeated mental cruelty."

On January 21, 1986, Mid-America, petitioner's former employer, filed a petition for intervention (Ill. Rev. Stat. 1985, ch. 110, par. 2—408) and a motion for reconsideration of the order setting aside the judgment of dissolution (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e)). Mid-America's petition for intervention alleged that it had an interest in the proceedings because the setting aside of the judgment of dissolution would allow respondent to pursue a claim against Mid-America under the Jones Act (46 U.S.C. sec. 688 *et seq.* (1982)) and general maritime law. The trial court denied this petition finding "Mid-America's interest if any was adequately protected by Terry Ray Perkinson and by the Special Administrator appointed in this case." The motion for reconsideration was not ruled upon.

On January 27, 1986, the special administrator filed a notice of appeal from the order setting aside the judgment of dissolution. On

January 29, 1986, Mid-America filed its notice of appeal from the aforementioned order and from the denial of its petition for intervention. These two appeals were consolidated. Thereafter, the special administrator and respondent "satisfied their claims," and that appeal was dismissed. Thus, the prior consolidation was vacated, leaving only Mid-America's appeal.

The first issue on appeal is whether Mid-America's petition for intervention was erroneously denied. Mid-America's petition requested either intervention of right (Ill. Rev. Stat. 1985, ch. 110, par. 2—408(a)), or permissive intervention (Ill. Rev. Stat. 1985, ch. 110, par. 2—408(b)). The circuit court denied the petition, reasoning that Mid-America's "interest if any was adequately protected by Terry Ray Perkinson and by the Special Administrator appointed in this case." Mid-America now appeals from that ruling, arguing that it had a right to intervene in the action to oppose the overturning of the judgment of dissolution.

We note, preliminarily, that Mid-America advances only an "intervention of right argument" on appeal. In neither its main brief or reply does Mid-America argue that it was entitled to permissive intervention. As this point was not argued, it is waived on appeal pursuant to Supreme Court Rule 341(e)(7) (103 Ill. 2d R. 341(e)(7)).

■ Generally, courts have held that intervention is a matter within the sound discretion of the trial court and its judgment will not be reversed absent a clear abuse of discretion. (*E.g., In re Application of Bashore* (1982), 109 Ill. App. 3d 396, 440 N.E.2d 936; *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136.) One court has recently stated that intervention of right should be distinguished from permissive intervention insofar as the exercise of discretion is concerned. (*City of Chicago v. John Hancock Mutual Life Insurance Co.* (1984), 127 Ill. App. 3d 140, 468 N.E.2d 428.) That court indicated that the trial court's discretion with regard to intervention of right should be limited to determining the statutory requirements of timeliness, inadequacy of representation, and sufficiency of interest. 127 Ill. App. 3d 140, 144, 468 N.E.2d 428, 431.

Intervention of right is governed by section 2—408(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—408(a)). Section 2—408(a) provides in pertinent part:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action: *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action ***." Ill. Rev. Stat. 1985, ch. 110, par.

2—408(a).

While the parties advance several arguments in support of their respective positions, the pivotal question in this case is whether Mid-America had a sufficient interest in the action. Mid-America's interest in the dissolution proceedings appears to be one of protecting itself from possible future claims brought by the respondent under the Jones Act (46 U.S.C. sec. 688 et seq. (1982)), and general maritime law. Petitioner was an employee of Mid-America's traveling on board one of its vessels at the time he drowned. Mid-America points out that the legal spouse of a deceased seaman is entitled to pursue a claim arising out of the seaman's death under the Jones Act (46 U.S.C. sec. 688 et seq. (1982), and general maritime law. However, a divorced spouse is not entitled to pursue such a claim. (E.g., Sea-Land Services, Inc. v. Gaudet (1974), 414 U.S. 573, 584-85, 39 L. Ed. 2d 9, 20-21, 94 S. Ct. 806, 814-15; Dow v. Carnegie-Illinois Steel Corp. (1948), 165 F.2d 777, 779-80.) Hence, Mid-America alleges that the setting aside of the judgment of dissolution would restore respondent to her previous status as petitioner's legal spouse, entitling her to a claim against Mid-America under the Jones Act (46 U.S.C. sec. 688 et seq. (1982)), and general maritime law.

Mid-America relies on Zitouniadis v. Hawks (Va. Cir. Ct.), 1972 Am. Mar. Cas. 2133, to support its contention that such an interest entitles it to intervention. In Zitouniadis, the divorced spouse of a deceased seaman brought a bill in chancery against the administrator of her ex-husband's estate to have the previous divorce decree declared null and void. She sought to be restored to her previous status as decedent's legal wife, which would entitle her to participate in any recovery obtained by the administrator under a pending Jones Act suit. Decedent's employer filed a petition to intervene in the chancery action, contending that the spouse's status to recover damages under a Jones Act claim was dependent upon her marital status. The spouse opposed the intervention, arguing that the employer had no standing, interest, or right to intervene in the divorce proceeding. At that time, the State of Virginia had no statute governing intervention. The circuit court reasoned, however, that a person must have "the required interest" to intervene. (1972 Am. Mar. Cas. 2133, 2135.) The circuit court found the employer was "immediately and vitally interested in the outcome of the [chancery] suit," and granted the employer's petition to intervene. 1972 Am. Mar. Cas. 2133, 2135.

That case is distinguishable from the one at bar. First, in Zitouniadis there was a pending Jones Act suit brought by the administrator of the deceased seaman's estate. Should the divorced spouse

have been restored to her previous status as decedent's legal spouse, she would automatically receive a portion of the damages awarded the estate under the pending Jones Act suit. No such action is pending here. Unlike the employee in *Zitouniadis*, Mid-America's interest is speculative and based upon the possibility that a future claim might arise. Second, and more significant to our determination, the circuit court in *Zitouniadis* explicitly stated "[t]here is no Statute in Virginia governing the subject of intervention in such a case as this. (1972 Am. Mar. Cas. 2133, 2135.) Illinois, however, has an intervention statute, which sets forth the requirements which must be met in order for a party to be allowed to intervene. (Ill. Rev. Stat. 1985, ch. 110, par. 2—408.) In addition, there are numerous decisions by courts of this State interpreting the language of that statute and applying its requirements.

■ Respondent cites the supreme court decision in *Bernero v. Bernero* (1936), 363 Ill. 328, 2 N.E.2d 317, in support of her contention that the denial of intervention was proper. In *Bernero*, the parties obtained a divorce, after which the divorced husband (a fireman) died. Two months after his death, the divorced wife sought to have the divorce decree vacated. Ultimately, the circuit court vacated the divorce decree. Following the entry of this final decree, the retirement board of the Fireman's Annuity and Benefit Fund filed a petition to intervene which was denied. The board argued on appeal that the "decree in the court below will result in Mabel Bernero becoming the widow of John Bernero, and that by this result she will become entitled to, and may, claim a pension from the [board]." (363 Ill. 328, 330, 2 N.E.2d 317, 318.) The board argued that for this reason it had a right to intervene, because the judgment would affect the pension fund. The wife contended that this result is merely an incident, and that if the fund is affected, it is only indirectly. The Illinois Supreme Court denied intervention reasoning:

> "In this subject matter the appellant had no interest, and neither could the judgment rendered directly affect any property or title of the appellant. It is obvious that the marital status of John Bernero at the date of his death might determine whether or not the appellant is liable for a pension, but that interest falls far short of any direct or immediate interest in the subject matter. On the other hand, it is merely incidental." (363 Ill. 328, 331, 2 N.E.2d 317, 319.)

As Mid-America indicates, this case was decided prior to the enactment of the intervention statute in 1956. (Ill. Rev. Stat. 1955, ch. 110, par. 26.1.) The overall design of the intervention statute was to liber-

alize the practice of intervention, and particularly to relax the requirement that the intervenor have a "direct" interest in the action. (Ill. Ann. Stat., ch. 110, par. 26.1, Joint Committee Comments (Smith-Hurd 1983); *Mensik v. Smith* (1960), 18 Ill. 2d 572, 166 N.E.2d 265.) Decisions immediately following the enactment of that statute determined that the *Bernero* court's "direct interest" requirement severely limited the right to intervene. (See, *e.g., Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 134 N.E.2d 793.) We point out, however, that the *Bernero* court also determined that "neither could the judgment rendered directly affect any property or title of the appellant," under the circumstances of that case. (*Bernero v. Bernero* (1936), 363 Ill. 328, 331, 2 N.E.2d 317, 319.) It is worth noting that this particular line of reasoning is consistent with that now used by courts to determine whether a party is entitled to intervene in an action. See *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 112, 417 N.E.2d 1343, 1349.

■ The majority of courts in this State now hold that a party need not have a direct interest in the pending suit in order to intervene, however, the intervenor must stand to gain or lose "by the direct legal operation and effect of a judgment in the suit." (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 112, 417 N.E.2d 1343, 1349; *In re Application of Bashore* (1982), 109 Ill. App. 3d 396, 397, 440 N.E.2d 936, 938; *In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 180, 356 N.E.2d 195, 199; *cf. People v. Roush* (1982), 111 Ill. App. 3d 618, 621, 444 N.E.2d 625, 627 (holding that the "interest must be direct and substantial").) One who petitions to intervene must have an "enforceable or recognizable right," and more than a general interest in the subject matter of the proceedings. *Board of Education, District No. 219 v. Board of Education, District No. 225* (1983), 112 Ill. App. 3d 212, 221, 445 N.E.2d 464, 472; *Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 487, 425 N.E.2d 1113, 1116.

■ This court has held that if a party's interest is speculative or hypothetical this does not constitute an interest sufficient to warrant intervention. (*In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 356 N.E.2d 195.) In that case, the chairman of the county board sought to intervene, as an individual, in a suit brought by the State's Attorney to obtain an order compelling the county board to hire part-time State's Attorneys. The chairman argued that he had an interest in the litigation because he might be subject to a contempt citation if the county board refused to comply with the court order. The court rejected his claim as speculative and hypo-

thetical and not constituting an "interest" entitling him to intervene.

Moreover, where the interests claimed by an intervenor are general interest "which, if allowed to be asserted in [the] action, might, depending upon the holding, be advantageous to [the intervenor] at some future date," then such interests do not entitle a party to intervene. *United Steel Workers of America, Local 5292 v. Bailey* (1975), 29 Ill. App. 3d 392, 394, 329 N.E.2d 867, 869; accord, *In re Application of Bashore* (1982), 109 Ill. App. 3d 396, 440 N.E.2d 936.

■ Mid-America's interest in protecting against any possible future claims brought by respondent under the Jones Act and general maritime law does not rise to the level of an "enforceable right" in the subject matter of this litigation. Mid-America does not stand to lose or gain by "direct legal operation and effect" of the judgment in the dissolution action. Instead, its interest is speculative, hypothetical, and incidental. Accordingly, the trial court properly denied intervention in this case.

We note that Mid-America also appeals from the final order of the circuit court setting side the judgment of dissolution, and raises a number of questions concerning the propriety of that determination. Although Mid-America's argument is well taken, it is not properly before this court.

Mid-America was not an original party to the dissolution action, nor was it a party at the time the final order was entered. While Mid-America filed a post-judgment petition to intervene and be made a party in the action, this was denied. Furthermore, the final order entered in that cause does not adjudicate any substantial rights of Mid-America. Thus, Mid-America has no standing to appeal from the order of the trial court setting aside the judgment of dissolution and the propriety of that judgment is not before this court. Rather, the only issue properly involved in this appeal was whether the trial court erred in denying Mid-America's petition for intervention. See *Strader v. Board of Education* (1953), 413 Ill. 610, 110 N.E. 2d 191 (holding that a petitioner seeking review of a denial of intervention may not raise issues relating to the final judgment in the action); see also *In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 356 N.E.2d 195; *Safeway Insurance Co. v. Harvey* (1976), 36 Ill. App. 3d 388, 343 N.E.2d 679; *People v. Thompson* (1968), 101 Ill. App. 2d 104, 242 N.E.2d 49.

For the reasons stated, the judgment of the circuit court of Calhoun County denying Mid-America's petition for intervention is affirmed; the appeal from the order of the circuit court overturning the judgment of dissolution is dismissed.

Affirmed in part and dismissed in part.

MORTHLAND, J., concurs.

JUSTICE GREEN, specially concurring:
I concur in the decision of the majority, because I agree that Mid-America had neither a right to intervene nor a right to appeal from the order ultimately denying dissolution. I write specially because I am uncertain whether Mid-America's claimed interest was too speculative and hypothetical or too lacking in enforceability to require that it be given a right to intervene. Accordingly, I prefer not to decide the case on those grounds. I agree with the majority that Mid-America's interest in the dissolution proceedings was only incidental. That was so because of the nature of the marital relationship and of proceedings to dissolve marriages. I would decide the case solely on the basis of the incidental nature of Mid-America's interest.

Mid-America's interest is deemed to be hypothetical and speculative, because respondent had not yet filed any Jones Act case. However, Mid-America's interest is much less so than that of those seeking intervention in the cases of *In re Appointment of Special State's Attorneys* (1976) 42 Ill. App. 3d 176, 356 N.E.2d 195, or in *United Steel Workers of America, Local 5292 v. Bailey* (1975), 29 Ill. App. 3d 392, 329 N.E.2d 867. In the former case, the county board chairman would have been subject to contempt only if he and other officers had refused to obey a court order entered in the suit against the board. The board, as an entity, was a party to the suit. In the latter case, an employer of union workers sought to intervene in a suit brought by the union against his member workers for fines for failure to support a strike against him. The employer maintained he had an interest, because, if the union could fine his employees, the union's bargaining power would be strengthened to his economic disadvantage. Mid-America's interest here is more like that of the parties seeking to intervene in *Bashore*. They maintained that they had a right to intervene in a suit where the question of whether landowners could redeem from a tax sale was in issue, because, if redemption were allowed and made, they would have liens against the premises. Although I concurred in the *Bashore* opinion, I am reluctant to uphold the denial of leave to intervene here on the fact that no suit under the Jones Act had been filed. Mid-America's lack of a sufficient interest is more basic than that.

I am also reluctant to approve denial of intervention on the ground that Mid-America's interest does not involve an affirmative

property right. In a proper case, intervention should be allowed when the decision in the case might destroy a right of defense otherwise available to the party seeking intervention. However, a marriage dissolution proceeding is not a proper case to allow such intervention.

In addition to the interests that spouses have in a proceeding to dissolve a marriage, it has been said that the State and the unemancipated children of the marriage also have an interest. (*In re Fisher* (1958), 15 Ill. 2d 139, 153 N.E.2d 832.) Others have an interest in the portion of the proceedings involved with division and distribution of property of the parties if they also have an interest in that property. (*Baker v. Baker* (1955), 6 Ill. App. 2d 557, 128 N.E.2d 616.) Other than the circuit court case of *Zitouniadis v. Hawks* (Va. Cir. Ct.), 1972 Am. Mar. Cas. 2133, I am unaware of any case where others have been permitted to intervene. The interests of the State and of the parties' children are in the stability and maintenance of marriage. No person except a spouse to a marriage has any right to have it dissolved. During his lifetime, the deceased petitioner had a right to withdraw his petition for dissolution at any time, and Mid-America could not have complained. This would have been so even if, before the decree was final, petitioner had been injured, knew he was to die, and had withdrawn the petition so that respondent could file a Jones Act case. After death, the petitioner's control of the dissolution proceeding passed to petitioner's personal representative.

Regardless of whether petitioner had grounds for dissolution of his marriage and regardless of whether the trial court erred in refusing to dissolve the marriage, petitioner's marital status at the time of his death was a fortuitous circumstance as far as Mid-America was concerned. Thus, any collateral consequences that status might have had on Mid-America, regardless of its importance, created only an incidental interest which was not entitled to be protected by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*). I deem this to be the basic reason why Mid-America had no right to intervene.