UNIVERSITY SQUARE, LTD., Plaintiff-Appellee and Cross-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants.—(JERIMIAH E. JOYCE, Intervenor-Appellant and Cross-Appellee.)

First District (1st Division)    No. 79-42

Opinion filed June 18, 1979.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for appellant.

Mark S. Lieberman, of Rosenthal & Schanfield, of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, University Square, Ltd. (University), brought an action in mandamus against the City of Chicago and Joseph F. Fitzgerald,

Commissioner of Buildings (defendants) seeking the issuance of building permits. The circuit court of Cook County ordered that a writ of mandamus issue. On the 31st day after this order, Jerimiah Joyce filed a petition to intervene and motion to reconsider. Joyce subsequently filed a motion to vacate pursuant to section 72 of the Civil Practice Act. The circuit court allowed intervention, but denied on the merits Joyce's motions to reconsider and vacate. Joyce appeals the denial of these motions. Plaintiff cross-appeals from the order allowing intervention. Defendants did not appeal and are not parties to this appeal.

The controversy concerns the refusal of the Building Commissioner of the City of Chicago to process plaintiff's application for a building permit. University thereupon filed a petition for writ of mandamus. Its two-count first amended petition alleges that University's application fully complies with the requirements of all applicable laws and ordinances. It further alleges that defendants are under a duty to process plaintiff's application without delay and issue a building permit.

University was the purchaser of certain property described in the petition and located in Chicago, Illinois. On or about February 8, 1978, University submitted applications regarding permits to erect three of 25 three-story apartment structures. Each structure was to contain 18 dwelling units. The property is zoned as a Residential Planned Development. Development plans submitted by University were approved by the department of development and planning of the City of Chicago on November 9, 1977. University's proposal conformed to the Plan of Development which had been approved by the Chicago City Council on November 20, 1972. In count two plaintiff further alleged it had expended substantial sums in preparation for construction in reliance upon timely issuance of a building permit.

On May 15, 1978, following an evidentiary hearing, the circuit court ordered the issuance of a peremptory writ of mandamus directing defendants to issue the building permits applied for by University. The court also found that there was no just cause to delay enforcement or appeal of this final order. Defendants did not appeal and this order became final on June 14, 1978.

On June 15, 1978, Joyce filed a petition to intervene, along with a motion to reconsider. Defendants filed a motion to vacate. On June 19, 1978, Joyce filed an amended motion to reconsider. As grounds for intervention, Joyce alleged that:

(1) "[He] is so situated as to be adversely affected by the Court's disposition of the instant litigation relating to the aforementioned property."

(2) "[He] will or may be bound by this Court's judgment, decree or

order and, as such, the representation of [his] interests by existing parties is or may be inadequate."

(3) "[His] claim and/or defense and the main action have common questions of law and fact."

(4) "* * * intervention * * * will not prejudice any rights of any present parties."

On July 17, 1978, University filed a motion to strike and dismiss the petition to intervene. On August 25, 1978, Joyce filed a response to University's motion, a petition pursuant to section 72 of the Civil Practice Act and the supporting affidavit of Jerimiah Joyce.

Joyce's section 72 petition alleged that defendants failed to assert in their responsive pleadings the applicability and effect of the pertinent part of chapter 194A, and specifically section 11.11—1, of the Municipal Code of Chicago:

"For the purpose of this zoning ordinance, all development of land or air rights which fulfills one or more of the following criteria set forth in subsections (a) through (o) hereof, are required to follow the provisions relating to planned development set forth in this zoning ordinance. * * * provided, however, that any such land or air rights *must also be under single ownership or control or under single designated control.* * * *" (Emphasis added.)

The subject property was previously owned by Ornoff Associates, Inc., as part of a 25-acre tract. In November of 1972, the Chicago City Council rezoned this tract to the designation of Residential Planned Development. Following this zoning change, University acquired ownership of 12½ acres of the tract pursuant to a foreclosure sale. Joyce contended that the subject property was not "under single ownership or control or under single designated control." He argues that this language should be interpreted to require unified control beyond the time rezoning to Planned Development status is sought. Joyce alleged section 72 relief was appropriate because the zoning ordinance and the argued construction of the ordinance were never presented to the trial court.

Finally, Joyce further alleged in his section 72 petition that he exercised due diligence with regard to the filing of his petition to intervene. In his supporting affidavit, Joyce stated that he had no knowledge of University's action for mandamus during the pendency of the litigation and prior to the judgment order of May 15, 1978. Joyce first learned of this litigation on or about June 9, 1978, and immediately contacted the corporation counsel for the City of Chicago. He inquired as to whether or not the defense of chapter 194A of the Chicago Municipal Code had been raised. He was advised that this defense was not raised and that a motion to reconsider on this basis would be considered.

Joyce further stated that on or about June 12 or June 13, and also on June 14, 1978, the office of the corporation counsel informed him they had not yet decided whether to file a motion to reconsider. Joyce advised the corporation counsel that if no motion was filed, he would seek intervention and file such a motion. Mr. Healy, of the corporation counsel's office, told Joyce that a motion to reconsider had to be filed on or before June 16, 1978. On June 15, 1978, Joyce filed his petition to intervene and motion to reconsider.

On September 5, 1978, University filed affidavits of Sheldon Good and Arthur Powell. Mr. Good is a partner in University Square, Ltd. On March 7, 1978, he met with Joyce to discuss University's attempts to obtain the issuance of building permits. During the meeting, Good advised Joyce that in the event the Building Commissioner continued to refuse to issue the permits, a mandamus action would be brought. Affiant further stated that Joyce was familiar with the problem and told him to proceed to file suit.

Arthur Powell is the vice president of University. He stated in his affidavit that University has incurred out-of-pocket expenses to date (September 5, 1978) of approximately $180,000 in preparation for construction. Moreover, University will continue to incur monthly expenses in excess of $10,000 per month pending commencement of construction. Construction delays will cause University to bear increased construction, labor, material and financing costs at the rate of approximately 1% per month. The total estimated construction cost of the project is $12,000,000 and further delays make the obtaining of financing more difficult and expensive.

On November 15, 1978, the trial court made findings and ordered in pertinent part:

"The court having reviewed the motions and briefs, having heard the arguments of counsel and being fully advised in the premises:

THE COURT HEREBY FINDS THAT:

1. On March 7, 1978, Jerimiah Joyce was advised by one of the principals in University Square, Ltd. that it intended to file a mandamus suit to compel the issuance of building permits for the property at issue.

2. The Court entered its final order in this case on May 15, 1978 directing the issuance of a writ of mandamus upon the Defendants.

3. Jerimiah Joyce's interest in the litigation is as alderman in the ward and a taxpayer and residing within 1.3 miles of the property in which the property at issue is located, and he filed his Petition To Intervene on June 15, 1978.

4. The Court makes no finding for the purpose of this order [regarding costs of delay and prejudice to University].

❊ ❊ ❊

6. Although the Court does not believe that intervention is warranted on the facts or under the circumstances of Section 26.1 of the Civil Practice Act, the Court will allow Mr. Joyce to intervene as a means of permitting the procedural and substantive matter to be presented to the Appellate Court at one time, thereby avoiding a piecemeal appeal.

IT IS HEREBY ORDERED:

1. The Petition to Intervene of Jerimiah Joyce is hereby allowed and he is granted leave to file instanter his Amended Motion to Reconsider and Intervening Petitioner's Petition Pursuant to Section 72 of the Illinois Civil Practice Act To Vacate The Order of May 15, 1978.

2. Plaintiff's Motion To Strike and Dismiss Petition To Intervene is denied.

3. Intervening Petitioner's Amended Motion To Reconsider this Court's Order of May 15, 1978 is denied on the merits.

4. Intervening Petitioner's Petition Pursuant To Section 72 of the Illinois Civil Practice Act To Vacate The Order of May 15, 1978 is denied on the merits.

❄ ❄ ❄"

The trial court construed section 11.11—1 of chapter 194A of the Municipal Code of Chicago as requiring unity of ownership only at the time the Planned Development designation is granted.

Joyce appeals the denial of his motions on the merits. University cross-appeals and contests Joyce's intervention.

We reverse that portion of the trial court's order allowing Joyce to intervene. Accordingly, Joyce's contentions concerning the merits of his motions are not considered.

The right to intervene is set out in section 26.1 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 26.1.) Joyce's petition to intervene was filed on the 31st day after the writ of mandamus was ordered to issue. University argues that the trial court improperly allowed Joyce to intervene because (1) intervention was not timely, (2) intervention as of right was not warranted, and (3) discretionary intervention was not warranted.

Under our view of this case we need consider only points 2 and 3. ■■ We find that Joyce failed to meet the requirements of the intervention statute, both for intervention as of right and by leave of court. Section 26.1 is to be liberally construed. (*Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 182 N.E.2d 742.) Intervention is a matter within the sound discretion of the trial court and its judgment will not be disturbed absent a clear abuse of discretion. (*Ackmann v. Clayton* (1976), 39 Ill. App. 3d 1013, 350 N.E.2d 824.) Its purpose is to expedite litigation by disposing of

the entire controversy among the persons involved in one action to prevent a multiplicity of actions. *Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 539, 331 N.E.2d 172.

■■ However, the trial court cannot act to fulfill the purpose of the intervention statute without the threshold determination that its requirements are met. In this regard, the trial court's finding that intervention is not warranted under the statute but will be allowed to avoid a piecemeal appeal is erroneous.

Intervention as of right is granted:

"(1) * * * (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court * * *." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)(b)(c).

A party seeking to intervene need not show a direct interest in the suit. However, he must have an enforceable or recognizable right and more than a general interest in the subject matter of the proceedings. (*In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 356 N.E.2d 195; *Gray v. Starkey* (1976), 41 Ill. App. 3d 555, 353 N.E.2d 703.) At the hearing on intervention, the trial court determined that Joyce's interest in the litigation was as an alderman in the ward and a taxpayer residing within 1.3 miles of the property. Joyce contended that the escalation of population density and traffic caused by plaintiff's project would adversely affect his use and enjoyment of his property.

■■ In his brief Joyce concedes that his status as an alderman may not enhance intervention standing. Being a taxpayer also adds little in light of the ban against general interest litigation. (See *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293.) The comments of the court in *Garner v. County of Du Page* (1956), 8 Ill. 2d 155, 160, 133 N.E.2d 303 (quoting from *Blumberg v. Hill* (1953), 119 N.Y.S.2d 855), are pertinent:

"* * * 'As one may not assume the role of champion of a community to challenge public officers to meet him in courts of justice to defend their official acts, * * * so one having only a general interest may not adopt the part of an advocate of municipal welfare * * * to promote a judicial enforcement or interpretation of zoning regulations.' "

Accordingly, Joyce's interest must be measured by his proximity to the property of the mandamus action. Decisional law in Illinois consistently recognizes the right of owners of adjacent and contiguous property to intervene in zoning controversies. *Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 256 N.E.2d 1; *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 182 N.E.2d 742; *Nott v. Wolff* (1960), 18 Ill. 2d 362,

163 N.E.2d 809; *Seger v. County of Du Page* (1978), 58 Ill. App. 3d 858, 374 N.E.2d 1099; *Sgro v. Howarth* (1964), 54 Ill. App. 2d 1, 203 N.E.2d 173. See also 1 Nichols, Illinois Civil Practice §334 n.21 (1976), and accompanying text for additional cases.

In *Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152, intervening petitioners were residents of a subdivision located approximately 500 feet from plaintiff's land. Post-judgment intervention in an action concerning approval of a site plan for a shopping center was allowed.

Joyce, however, maintains that it is improper to focus upon the distance between his property and the University project. He cites *Elmhurst-Chicago Stone Co. v. Village of Bartlett* (1975), 26 Ill. App. 3d 1021, 1024, 1026, 325 N.E.2d 412, for support:

> "We know of no hard and fast rule as to what distance must separate parties before they cease to be neighbors * * *.
>
> "It is apparent that each case must be decided on the basis of the facts presented * * *."

Nevertheless, Joyce cites no cases and we have found none where a landowner 1.3 miles distant from the property subject to a zoning dispute was allowed to intervene.

*Elmhurst-Chicago Stone Co. v. Village of Bartlett* is factually analogous to the case at bar. Plaintiff there brought a mandamus action against the Village of Bartlett to compel authorization for a permit to construct an asphalt plant. The zoning ordinance authorizing the asphalt plant had been in existence more than five years. Petitioners were owners of neighboring real estate. They alleged that their property would sustain damage, its value would be diminished and the enjoyment of same would be impaired by the plant. The trial court denied their petition to intervene and the appellate court affirmed. Petitioners owned property in excess of one mile to the north and east, in excess of 1250 feet to the south, and in excess of 819 feet to the west of the proposed asphalt plant. The court held that petitioners did not possess sufficient interest in the subject matter of the controversy to warrant reversal of a denial of intervention, noting that these distances provided a sufficient geographic buffer. The court considered petitioners to be distant neighbors at best and remarked (26 Ill. App. 3d 1021, 1025):

> "Not only do we find that the trial court did not abuse its discretion in denying intervention but to have ruled otherwise may well have opened the door to harassing vexatious suits by persons not aggrieved. See *Garner v. County of Du Page*, 8 Ill. 2d 155, 133 N.E.2d 303."

Here there is a comparable buffer zone between Joyce's property and the University project. Moreover, it is difficult to see how Joyce can complain about independent but conforming development of the two

halves of the property when one developer concededly can build the same site plan on both halves. Joyce is neither adversely affected by the court's resolution of the property dispute nor bound by the judgment. Joyce has failed to establish how University's project will prejudice his legal rights. Accordingly, intervention as of rights is not warranted under section 26.1(1)(b)(c) of the Civil Practice Act above quoted.

■■ In addition, University argues that Joyce's petition was insufficient because it is wholly conclusory and that the supporting facts were not determined until the hearing. Section 26.1(5) requires that the petition set forth "the grounds for intervention." The applicant must set forth facts demonstrating his interest in the subject matter of the litigation. (*Hyland v. 79 West Monroe Corp.* (1954), 2 Ill. App. 2d 83, 118 N.E.2d 636.) We agree that Joyce's petition is conclusory, merely recites the statutory language, and was also insufficient on this ground.

It is not clear from the record whether Joyce was allowed to intervene as of right or as a matter of discretion. In the event the latter was the case, we find the trial court abused its discretion. Where discretionary intervention is authorized, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(5).

The trial court initially found that based on Powell's affidavit Joyce's intervention and the ensuing delay would cause University considerable monetary burdens. At a subsequent hearing on intervention, the trial court withdrew this finding and declined to enter any findings concerning delay and prejudice.

■■ The facts, however, are uncontroverted. Powell's affidavit regarding University's construction, labor, material and financing costs occasioned by Joyce's post-judgment intervention was not challenged at trial. Affiant stated that expenses in preparation for construction were about $180,000. Monthly expenses due to delay would approximate $10,000 plus an inflation factor. Accordingly, in light of the evidence of apparent and substantial monetary prejudice to University, discretionary intervention was not warranted.

University also argues that the trial court lacked jurisdiction to consider either Joyce's motion to reconsider or his section 72 petition. In view of the conclusion we have reached, we find it unnecessary to consider these contentions.

The order of the circuit court of Cook County granting Jerimiah Joyce leave to intervene is reversed.

Reversed.

GOLDBERG, P. J., and McGLOON, J., concur.