PJS ENTERPRISES, Plaintiff-Appellee, *v.* PAUL KLINCAR, Chairman of the Board of Illinois Prisoner Review Board, Defendant-Appellee (Jessie Donald Sumner, Intervenor-Appellant).

Fifth District   No. 5—83—0609

Opinion filed July 6, 1984.

James B. Roberts, of Legal Clinic, Southern Illinois University, of Carbondale, for appellant.

McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria (Rebecca S. Riddell, of counsel), for appellee PJS Enterprises.

JUSTICE JONES delivered the opinion of the court:

Jessie Donald Sumner, incarcerated at Menard Correctional Center, appeals from the trial court's denial of his "motion" for leave to intervene in a suit brought by PJS Enterprises, the owner of the Peoria Journal Star, which is a daily newspaper of general circulation. The suit was brought against Paul Klincar, chairman of the board of the Illinois Prisoner Review Board.

On March 9, 1983, the plaintiff sought and obtained a temporary restraining order forbidding the defendant from prohibiting the presence of the plaintiff at the parole hearing of Jessie Donald Sumner, which was scheduled to be held on that day. The plaintiff had sought the temporary restraining order as a result of having learned that one of its reporters would not be allowed to attend the parole hearing of Jessie Sumner if Sumner should request that his parole hearing be closed. Plaintiff maintained that to prohibit plaintiff's attendance at the parole hearing would be a violation of the provisions of the Open Meetings Act (Ill. Rev. Stat. 1983, ch. 102, par. 41 *et seq.*) because "the hearing portion of the parole hearing *** is a public meeting."

The plaintiff subsequently sought preliminary and permanent injunctive relief. Following a hearing the trial court issued a preliminary injunction on March 21, 1983, that restrained and enjoined

> "the Defendant, PAUL KLINCAR, as Chairman of the Board and each of the other members of the Board of the Illinois Prisoner Review Board, and their agents and employees from doing or taking, or causing to be done or taken, any action to prohibit the Plaintiff, or any agents or employees of the Plaintiff, or

other members of the news media or the general public, from being present at any parole hearing, including but not limited to the parole hearing of Jesse [*sic*] Donald Sumner."

The trial court found "[t]hat this Order should issue because to prohibit the attendance and presence of the Plaintiff at parole hearings would be in violation of the provisions of the Illinois Open Meetings Act."

A schedule for the submission of briefs concerning the permanent injunction called for the filing of a reply brief on June 24, 1983. On June 10, 1983, Jessie Sumner filed a "motion" for leave to intervene as a matter of right (Ill. Rev. Stat. 1983, ch. 110, par. 2—408). On the same date he filed a motion for enlargement of time in which to respond to the plaintiff's petition for injunctive relief and proposed orders. In his motion for leave to intervene Jessie Sumner set forth the procedural details of the present case and stated that "[u]pon being advised of the restraining order, [he] had refused to testify" at the parole hearing, that the temporary restraining order had bound him as well as the defendant, that "the representation of [his] interest by the parties is inadequate," and that he was entitled to intervene as a matter of right in order to represent his own interests adequately. He asked to be allowed to file an answer to the plaintiff's petition for injunctive relief.

On July 13, 1983, a hearing was held on the motion to intervene. At that time the intervenor, through his attorney, argued that his rights to a fair and proper parole hearing were affected by the action of the trial court, that his interest in the case was greater than that of the general public, and that the Attorney General, on behalf of the defendant, could not adequately represent the intervenor's interest inasmuch as "the interest of the Prisoner Review Board, which is charged with protecting the public interest[,] and the interest of the potential parole leader [*sic*], are simply not the same and cannot be represented by the Attorney General's Office especially given the fact that the Attorney General's Office represented the Prisoner Review Board when prisoners sue the Prisoner Review Board concerning irregularities or problems in their parole hearing." The intervenor stated that he should be allowed to "present his interest to the Court so that an adequate determination as to whether or not the merits of this case should allow the press to be present at his hearing." The intervenor argued further that the plaintiff, by its objections to his intervention, was asking him to relitigate the same issues in a second suit. He continued by saying:

"There are exceptions to the Open Meetings Act, and it is

our position that exceptions are proper in this case. We are not in a position here to go into all the merits. There are factors we think must be brought to the Court's attention that have not as yet. There are facts that should be brought to the Court's attention concerning these type [sic] of things before we allow this sweeping type of order to bar the prisoner's rights from deciding whether or not the press should be present at their hearing. *** It is our position that these are the exact issues that this Court needs to have before them [sic] and that the intervenor is the only one that can bring them before this Court. The facts again that point out the interest of the intervenor and the fact that the intervenor is not adequately represented by the defendant we believe are set out in the plaintiff's own affidavits where they explain that the intervenor did not want the press and refused to proceed with the press there, and we feel that there are plenty of facts to show the interest of the intervenor and he should be allowed to present the whole picture to the Court so the Court can make a formal decision in this matter."

There followed this colloquy between the trial court and counsel for the intervenor:

"THE COURT: I still am at a loss as to what Mr. Sumner wants litigated in this case. I haven't heard anything except that he wants to intervene. I would like to know what is his position here that he feels that needs to be litigated beyond what this present case in its present state would decide one way or the other.

[Counsel for the intervenor]: I understand your request, Your Honor.

THE COURT: The Open Meetings Act, I don't know if you are going to attack it on a constitutional basis or whether it is some kind of an exception. I haven't heard anything other than really that he wants to intervene. He naturally is going to be affected, and so are all the other prisoners who come before the Prisoner Review Board will be affected by this decision. I understand that.

[Counsel for intervenor]: Your Honor, there are factors in this matter that affect Mr. Sumner's interest in ways that don't affect every other prisoner, I believe, and we would like, if the Court feels that these matters should be brought forward at this time, we would be willing to do that, but we would like to do it, instead of doing it in open Court we would like to do it in

a closed proceeding."

Counsel explained that the intervenor's request for a closed hearing arose out of concerns for his own safety and apparently that of others, adding, "We were hoping we wouldn't have to bring this to the Court's attention today, we were hoping for a different time, but I can understand the Court's interest in knowing exactly what kind of issues we want to raise in this matter, so we would prefer to raise them in this manner if we could." The trial court responded, "Well, I don't know what this all means. I understand what you are getting at." Later the trial court stated:

"I question the timeliness of the Motion to Intervene to start off with. I think in view of the situation that has developed here, there is no basis for intervention on the part of Jessie Donald Sumner from the facts that have been stated in this motion. I think the Court can only rule on the matters before it and that are relevant to this case, and if you people feel that Jessie Sumner has got some special kind of situation that warrants a closed hearing before the Board or some kind of a protective order that certain information that would come out not be revealed because of how he might directly be affected, then I think it is your obligation to file some other kind of action to protect him, because I do think that what the paper has done here, the plaintiff in this case, the newspaper has brought an action to clarify interest in the lawsuit that has been a question mark over this section as to whether or not this agency is in compliance with the Open Meetings Act."

The trial court concluded that the parties to the case should not be "burdened" at that point in the proceedings with the "area of protective orders" concerning the intervenor and denied the motion to intervene. On August 3, 1983, the trial court ordered that there was no just cause to delay enforcement or appeal of the order denying the motion for leave to intervene.

On August 16, 1983, the defendant filed a consent to entry of judgment against him "for the relief sought to the extent that such Order pertains only to public evidentiary hearings and not to the deliberations of the Prisoner Review Board." On August 29, 1983, the trial court issued an order for a permanent injunction in the matter. This appeal is taken from the order entered denying the motion for leave to intervene and presents the question whether the trial court abused its discretion in denying the motion.

Section 2—408(a)(2) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(a)(2)) provides:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action ***."

Section 2—408(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(e)) provides that "[a] person desiring to intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file."

Intervention is a matter within the sound discretion of the trial court, and its judgment will not be reversed unless a clear abuse of discretion is shown. (*University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136; *Ackmann v. Clayton* (1976), 39 Ill. App. 3d 1013, 350 N.E.2d 824; *Hagen v. Ruby Construction Co.* (1973), 13 Ill. App. 3d 725, 301 N.E.2d 311.) The purpose of intervention is to expedite litigation by disposing of an entire controversy in one action among the persons involved in order to prevent a multiplicity of actions. (*Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 425 N.E.2d 1113.) A petition to intervene must allege specific facts that demonstrate that the petitioner has a right to intervene, and averments that are merely conclusions and recite the statutory language are not sufficient to meet the requirements of the intervention statute. (*People ex rel. Thomas v. Village of Sleepy Hollow* (1981), 94 Ill. App. 3d 492, 418 N.E.2d 466.) To intervene the applicant must set forth facts demonstrating his interest in the subject matter of the litigation. *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136.

In the case at bar, although we appreciate counsel's caution and concern for the safety and welfare of his client, the intervenor did not identify for the trial court the issue or issues he would raise if he were permitted to intervene in this lawsuit. The petition, or "motion," itself is insufficient to meet the requirements of the intervention statute because the relevant averments there are essentially conclusory and merely recite the statutory language. Although at the hearing the intervenor expressed the belief that he falls within an exception to the Open Meetings Act, he did not suggest which one. Similarly, although he indicated at the hearing that he wanted a protective order, he did not give a reason sufficient in law as to why such an order should issue. Under the circumstances we cannot say that the trial court abused its discretion in refusing to permit intervention here.

The foregoing reasons aside, the trial court did not err in refusing to permit intervention for the further reason that, from what we are able to glean from the record, the issue or issues the intervenor appears to want resolved seem better addressed through an action brought by him alone. In the present case the trial court was obliged to deal with the applicability of the Open Meetings Act to the hearings of all prisoners who appear before the Illinois Prisoner Review Board. However, the record indicates that the intervenor considers his own situation unlike that of most prisoners who appear before this board. It would seem highly inexpedient for a trial court to inject into the consideration of a matter of general application to a very large number of persons, as the present case is, the special concerns of one. Although the trial court properly refused to allow Jessie Sumner to intervene in the present suit, he is not, of course, precluded or in any way foreclosed from bringing suit himself to obtain the relief he seeks.

Affirmed.

WELCH, P.J., and KASSERMAN, J., concur.