Bongi Cartage, Inc., Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, and John F. Ward, Defendants-Appellees.

Gen. No. 48,524.

First District, Third Division.

December 13, 1961.

Rehearing denied January 10, 1962.

■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■

Myer H. Gladstone, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel of the City of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal by the plaintiff from an order denying its motion for a temporary injunction.

The motion was based upon a sworn complaint which alleged that Bongi Cartage, Inc., was in the excavating business and operated a fleet of trucks; that it had subcontracts with six companies who in turn had prime contracts with the City of Chicago for the construction of sewers and other projects; that its subcontracts (one of these had been in existence for three years; the others had been entered into from one day to four months before the date the complaint was filed) were in excess of $450,000; that the work on each of them was from 10% to 80% completed and payments of ap-

proximately $19,000 had been received on account. It was alleged that further payments had been withheld on five subcontracts—under a contractual provision which permitted the prime contractors to withhold payments if the subcontracts were terminated for any reason—because the defendant John Ward, Purchasing Agent for the City of Chicago, had notified five of the prime contractors to terminate their subcontracts and had threatened to terminate the sixth contract, the one which was three years old; that the reason given for this notice was that the prime contractors failed to comply with the following provision in their contracts with the City:

> "The Contractor shall not assign the contract or subcontract any work to be performed or any materials to be furnished in the performance of the contract without the written approval of the Purchasing Agent. . . . Before any subcontract is approved, the Contractor shall satisfy the Purchasing Agent that the proposed subcontractor is suitably equipped for and experienced in that kind of work, has the proper financial resources to enable him to carry out his contract and has a satisfactory reputation for services and products."

The complaint acknowledged that Ward had not approved the subcontracts but it charged that the City's Department of Public Works and its commissioner, and the City's Bureau of Engineering and its chief, had been notified by each contractor that Bongi was a subcontractor. It further alleged that the Chief of the Bureau of Engineering had approved five of the subcontracts; that from time to time inspectors from the department and the bureau had checked the work being done by the plaintiff; that four of the prime contractors had other subcontractors working for them

435

whose subcontracts were not approved by Ward but these had not been terminated by him; that Bongi had performed its work competently and that no complaints had been made by either the City or the prime contractors.

In conclusion the complaint alleged that the plaintiff would suffer irreparable damage unless the defendants were temporarily and permanently enjoined from interfering with its subcontracts.

■ No answer of the defendants nor other pleading was on file at the time the injunction was denied, therefore, the correctness of the court's order must be determined from the complaint itself. The complaint clearly showed that the plaintiff's business was injured by the action of the defendants and that further substantial injury would result if the relief prayed for was not granted. The complaint did not make equally clear, however, that the defendants' actions were wrongful.

The plaintiff had no contractual relationship with the City. The prime contractors had such relationship and their contracts provided that they were not to enter into subcontracts without the written approval of the purchasing agent. A municipality has a continuing interest in those who perform work for it and who furnish materials to it, and no question has been raised as to the City's right to retain this control over those with whom it contracts. Nor is there any question as to the exclusive right of the defendant Ward to execute the contracts. The authority of the City's purchasing agent is statutory. Section 22A–15 of the Municipal Purchasing Act (Ill Rev Stats 1959, c 24, § 22A–15) states: "The purchasing agent shall: . . . (b) constitute the sole agent of the municipality in contracting for . . . services, or work. . . ."

■ It is argued, however, that the City is estopped from canceling the subcontracts because its Depart-

ment of Public Works and its Bureau of Engineering were notified by the prime contractors that the plaintiff was their subcontractor, because the Chief of the Bureau of Engineering approved some of the subcontracts and because the inspectors for the City examined, but did not complain of the plaintiff's work. It is not shown by what authority the Chief of the Bureau of Engineering altered the terms of the contracts made by the purchasing agent, although it is intimated that the agent might have delegated some of his authority. Approval of the subcontracts by any of these parties, whether tacit or declared, was contrary to the explicit language of the prime contracts, and it was also beyond any authorization in law. A further provision of section 22A–15 is: "No department, office, institution, commission, board, agency or instrumentality of any such municipality, or any officer or employee thereof, shall be empowered to execute any . . . contract . . . but all such . . . contracts shall be executed by said purchasing agent in conformity with the provisions of this Article."

This is not a case in which the City, through someone in apparent authority, irregularly entered into a contract with a plaintiff who, as a result, expended money, supplied materials or performed services for the City's benefit, and where the City by standing by and accepting the benefits is deemed to have ratified the contract. See: Branigar v. Village of Riverdale, 396 Ill 534, 72 NE2d 201; McGovern v. City of Chicago, 281 Ill 264, 118 NE 3; Welsbach Traffic Signal Co. v. Chicago, 328 Ill App 467, 66 NE2d 471. Bongi's services were engaged by, and were for the direct benefit of, the prime contractors. The City benefited only indirectly. The City's obligation for the benefits received is to the prime contractors; neither the City nor the purchasing agent has or had any obligation to Bongi. It was not the City's duty to inform Bongi that

its contracts had to be approved by Ward. The duty of obtaining approval was that of the prime contractors. If they chose to engage Bongi in defiance of their contracts and if Bongi chose to contract with them in contravention of those contracts and of the law, that was a risk taken by both for which the City is not responsible.

■ The complaint sought to enjoin Ward from performing an act which was not only within the power of his office but which came within his discretion. A court of equity is reluctant to interfere with the discretionary duties of a public official and usually will not do so unless fraud, corruption, oppression or gross injustice is shown, or unless the official is acting wholly outside his authority or is illegally impairing the rights or injuring the property of the complainant. Stewart v. Department of Public Works and Bldgs., 336 Ill 513, 168 NE 372; Smith v. Bangs, 15 Ill 400; Brown v. City of Chicago, 351 Ill App 366, 115 NE2d 354; Burton v. Aetna Life Ins. Co., 229 Ill App 517. None of these factors is established by the complaint. No fraud or corruption is charged; nothing illegal was done in terminating the subcontracts; the City is not estopped from denying responsibility to Bongi because of any injustice resulting from its prior conduct, and there is no oppression in the fact that Ward canceled some, but not all, nonapproved subcontracts. These subcontracts are voidable. Canceling them is a matter of discretion and the exercise of that discretion, although injurious to Bongi, does not furnish grounds to attack Ward's actions as either oppressive or unlawful.

■ The complaint in this case was both cogently and candidly drawn but it did not establish any right the plaintiff had to restrain the City from enforcing a provision of its own contracts, contracts to which the plaintiff was a stranger. Because of this, and other

438

reasons which become unnecessary to discuss, we believe the chancellor did not abuse his discretion in denying injunctive relief.

Affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.