**Mister Softee of Illinois, Inc., etc., et al., Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, et al., Defendants-Appellants.**

**Gen. No. 49,023.**

First District, Second Division.

May 29, 1963.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Allen Hartman, Assistant Corporation Counsel, of counsel), for appellants.

Rothschild, Hart, Stevens & Barry, of Chicago (Ira S. Kolb, of Schwartz & Cooper, of Chicago, Associate Counsel, of counsel), for appellees.

MR. JUSTICE BURKE delivered the opinion of the court:

Plaintiffs are in the business of dispensing soft ice cream by trucks on the streets throughout the City of Chicago. As a means of attracting the attention of prospective customers to their approach, each truck owned by one of the plaintiffs, Mister Softee of Illinois, Inc., is equipped with an electrically operated sound device which plays a jingle entitled "Here comes Mister Softee." An ordinance of the City, Section 99–56, prohibits persons on or proximate to a public way from making "distinctly and loudly audible upon such public way, any noise of any kind" by various means set forth, including sound amplifiers or similar mechanical devices. On July 3, 1962, the Superintendent of Police, in a memorandum, alerted police personnel to this ordinance and to complaints received with respect to noise being made by mobile frozen dairy dispensers in order to stimulate trade

on the public ways, and directed the police to take necessary action to remove further cause for complaint.

Some of Mister Softee's truck operators received tickets and summonses for violating the noise ordinance, Section 99–56. On July 12, 1962, plaintiffs filed a complaint naming the city, the Mayor and Superintendent of Police as defendants and seeking temporary and permanent injunctions against enforcement of Section 99–56 of the Municipal Code. The cause was referred to a Master in Chancery, who, after taking testimony, recommended that a temporary injunction issue. The Chancellor accepted the recommendation of the Master and directed the issuance of a temporary injunction restraining the defendants until the further order of the court from enforcing or attempting to enforce the ordinance as applied to the plaintiffs, their agents, licensees, franchise holders and employees in the business of dispensing from mobile vehicles ice cream and ice cream products. Defendants appeal from an order denying their motion to dissolve the temporary injunction.

Each of the trucks is equipped with two freezers, a generator and a hardening cabinet, making the truck a mobile ice cream and soda bar. One of the plaintiffs, Mister Softee, owns 53 of the trucks and has 60 franchised individual dealers who purchased the trucks from it. These dealers also purchase their supplies and receive services from Mister Softee. Each truck unit possesses an electrically operated music box chime, which plays the tune. The tune plays for 30 seconds. Formerly the chimes were timed to play the tune automatically once every minute. Under present operations the tune may be played by pushing a button on the front of the cab, which is to be played, under company regulations, once in each block. Although the jingle may be played as loud as twelve

decibels through the amplifying device, there is a company directive that it be played at five decibels.

Only one witness testified before the Master, the President and General Manager of Mister Softee, who described the business of that corporation, the equipment used, the business arrangement made with franchised dealers and the fact that based upon a two-day test, one day in an area on the north side of Chicago and the other day in an area on the south side, the gross sales were reduced as much as 40% when the truck operated without playing the jingle as compared with sales made when it was played. He testified that Mister Softee's gross sales in Chicago amount to $2,500,000. He stated that some of Mister Softee's operators had received tickets for violating the sound ordinance of Chicago, but that none was ever issued to the corporation itself. He said that the corporation has an arrangement to provide legal services for the operators. No evidence was offered by the defendants. They say that the ordinance must be read so as to prohibit only unreasonable noises.

Plaintiffs maintain that the ordinance, on its face, is unreasonable, discriminatory and incapable of intelligent application, that it does not merely prohibit distinct and loudly audible noise but any noise of any kind without defining its terms and therefore cannot reasonably be enforced. They say that the ordinance prohibits (1) any noise of any kind to be made on a public way, and (2) noises made elsewhere if they are distinctly and loudly audible upon the public way. The plaintiffs say that according to the ordinance the following sounds, among many others normally heard on city streets, are subject to prosecution: whistling, honking of horns, playing of radios, Salvation Army solicitors, and men dressed as Santa Claus spreading good cheer during the holiday season by

ringing bells. They also point out that the Master found as additional examples, the police traffic safety sound squad car, traffic policemen's whistles and church bells. Plaintiffs urge that the ordinance cannot be intelligently applied and is void for vagueness, citing, Mayhew v. Nelson, 346 Ill 381, 178 NE 921. Plaintiffs assert that because it is impossible to distinguish what noises are prohibited and what noises are permitted, the ordinance leaves to the defendants unlimited discretion to pick and choose which sounds they wish to restrain and which they seek to permit, citing, Saia v. New York, 334 US 558; People v. J. O. Beekman & Co., 347 Ill 92, 179 NE 435; Parks v. Libby-Owens-Ford Glass Co., 360 Ill 130, 195 NE 616.

■■ It cannot be doubted that the Illinois Municipal Code empowers the city to adopt Section 99–56. Under Section 11–1–1 of the Municipal Code (Ill Rev Stats 1961, c 24), the corporate authorities may "pass and enforce all necessary police ordinances"; and under Section 11–5–2 of the Code, these authorities may "prevent or suppress riots, routs, affrays, noises, disturbances, and disorderly assemblies in any public or private place"; under Section 11–42–5 of the Code, the corporate authorities may "license, tax, regulate, or prohibit hawkers, peddlers, pawnbrokers, itinerant merchants [and] transient vendors of merchandise"; under Section 11–60–2 of the Code, may "define, prevent and abate nuisances"; and under Section 11–80–20 of the Code may "regulate traffic and sales upon the streets, sidewalks, public places and municipal property." An ordinance may derive its validity from several different grants of power and its validity does not necessarily depend upon any single clause or section of the statute concerning the power of the Municipality to legislate upon the subject covered by the ordinance. Goodrich v. Busse, 247 Ill 366, 369, 93 NE 292; Gundling v. City of Chicago, 176 Ill 340, 52 NE 44.

■■■ We agree with the contention of the defendants that only distinctly and loudly audible noises upon the public streets are prohibited under a reasonable construction of Section 99–56. It is apparent from the wording of the ordinance that peddlers in alleys are given greater leeway with respect to "crying or calling for the purpose of advertising goods" than those who wish to advertise their wares upon the public streets. This difference is one of degree and does not render the ordinance unconstitutional. Section 99–56 does not discriminate as to persons, but regulates activity with respect to places upon which they are to operate. The well established rule applicable to the analysis of a statute or ordinance to determine its constitutionality is that it should be given the most reasonable interpretation which will remove it farthest from constitutional infirmity. Kovacs v. Cooper, 336 US 77, 85; Cox v. New Hampshire, 312 US 569, 575. The Illinois Supreme Court in Goodrich v. Busse, 247 Ill 366, 93 NE 292, had almost the identical ordinance before it, which it construed as a valid, constitutional enactment. The earlier ordinance, lacking the words "distinctly and loudly audible" which appear in the later ordinance, would appear to be more objectionable from plaintiffs' standpoint. While we have no authority to pass on constitutional questions we are not required to assume that the ordinance is unconstitutional. In our view there is no debatable constitutional question as to the validity of Section 99–56.

■■ Plaintiffs criticize the ordinance on the ground that it leaves the defendant unlimited discretion to pick and choose which sounds they wish to restrain and which to permit. An adequate answer to this contention is given in Block v. City of Chicago, 239 Ill 251, 262, 87 NE 1011, wherein the court observed that government could not be carried on if

nothing could be left to the judgment and discretion of administrative officers. The question of whether a person is making distinctly and loudly audible noise upon a public way so as to cause his prosecution for violating Section 99–56 is one of fact. The ultimate decision whether such a noise was created and the ordinance violated is for the trier of fact in a complaint brought under the ordinance. In the Goodrich case, the Supreme Court recognized that large numbers of persons advertising their wares for sale upon the public streets of the city would soon, if not immediately, become a public nuisance, which would urgently demand abatement. The opinion quotes the following language with approval from New Orleans v. Fargot, 116 La 369, 40 So 735, which involved similar issues: " 'We are not concerned with the right or authority of the city council to prohibit the peddling and hawking of wares, but we do think that that body has the right and authority to put a stop to loud and boisterous outcries of overzealous and anxious sellers of goods and wares on the public streets.' " In Kovacs v. Cooper, 336 US 77, it was urged that the ordinance of Trenton, New Jersey was so vague, obscure and indefinite as to be unenforceable. The argument centered around the words "loud and raucous noises." The United States Supreme Court in upholding the ordinance with respect to that charge, stated (336 US 79): "While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." There is a similarity between "distinctly and loudly audible . . . noise" the standard of Section 99–56 in the instant case, and "loud and raucous noises" the standard upheld in the Kovacs case. In the Kovacs case, the court said, (83): "The police power of a state extends beyond health, morals and safety, and

comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community." The defendants do not seek to prohibit mechanical voice amplification, such as the playing of the Mister Softee jingle. The city seeks to regulate the use of such devices so that the volume of sound does not rise to "distinctly and loudly audible . . . noise." The question of whether the volume of sound emanating from mechanical sound amplifiers or other similar devices to the level of distinct and loudly audible noises is best left to the discretion of the authorities charged with the duty of maintaining the peace and public safety. Any dispute as to the application of the ordinance may be tested in court upon the trial of a complaint brought by the city for the alleged ordinance violation.

 Courts of equity are reluctant to enjoin the enforcement of an ordinance on a matter on which the municipality has the power to legislate. Goelitz Co. v. Town of Cicero, 28 Ill App2d 225, 171 NE2d 233. If it appears from the face of the complaint that there is no equity in it and no sufficient grounds are disclosed therein why the court should interfere, it is error to grant a temporary injunction. Biehn v. Tess, 340 Ill App 140, 145, 91 NE2d 160. It is well settled that courts of equity are without jurisdiction to aid parties in violation of public law or to interfere with the public duties of any of the departments of government. Such is the rule also as to ordinances regulatory in their nature, which provide a penalty for violation. Jackie Cab Co. v. Chicago Park Dist., 366 Ill 474, 479, 9 NE2d 213. In the Goelitz case, 28 Ill App2d 225, 171 NE2d 233, plaintiff sued to enjoin the town and its officers from prosecuting them for violations of a building ordinance and from filing any other complaints with respect to building ordinances. In reversing the injunction order we said, (228): "We are of the opinion that plaintiffs have

an adequate remedy before a Police Magistrate or in any court to which the case is taken by appeal. The defenses asserted in the instant case may be presented for consideration in any prosecution under the ordinances." See also, Delta Die Casting Co. v. Village of Schiller Park, 17 Ill App2d 543, 150 NE2d 843. In the case at bar there was no evidence to show at what volume plaintiffs' jingle was being played when the operators were charged with violating the ordinance. Plaintiffs' allegation of irreparable injury was a conclusion. There was no evidence that they were required to stop playing the jingle entirely in order to comply with the ordinance. After the tickets were issued, plaintiffs could have continued to operate their vehicles and to play their jingles subject to adjudication of the alleged violations in the trial of the cases. If the evidence so indicated the operators could be acquitted. All questions of fact and law may be considered and determined in the trial of the cases brought for violation of the ordinance. In the Goelitz case (28 Ill App2d 225), we said at 228: "The fact that the plaintiffs had a financial investment would not in itself afford an immunity to them from proceedings against them for violating a regulatory ordinance" The plaintiffs have an adequate remedy at law. The cases and the discussion concerning the propriety of allowing the issuance of a temporary injunction are applicable to a motion to dissolve an injunction improvidently issued.

The order denying defendants' motion to dissolve the temporary injunction is reversed and the injunction is dissolved.

Order reversed and injunction dissolved.

BRYANT, PJ and FRIEND, J, concur.