THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAUDE ROUSH *et al.*, Defendants.—(Bernard Thiem *et al.*, Petitioners-Appellants.)

First District (4th Division)   No. 82—2238

Opinion filed December 23, 1982.

JOHNSON, P.J., dissenting.

Mark J. Heyrman, of Mandel Legal Aid Clinic, of Chicago, and Charles D. Weisselberg, law student, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Louis F. Stalzer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Contempt proceedings were brought against Dr. Claude Roush and the Manteno Mental Health Center. As a result of these proceedings, the circuit court of Cook County ordered Roush and Manteno to take certain specific actions regarding patients who had been found not guilty by reason of insanity (NGRIs) and had been committed to the Department of Mental Health under the appropriate statute. The NGRIs sought to intervene in the contempt proceedings because they were affected by the court's order. The trial court denied the motion to intervene and also denied a petition for reconsideration of the underlying order. The NGRIs appeal from both of these orders.

The facts upon which this appeal is based are not in dispute. On July 17, 1981, Dr. Claude Roush, Facility Director of Manteno Mental Health Center, and Manteno were served with a rule to show cause why they should not be held in criminal contempt of court for negligently allowing an individual named Gary McConnell to escape from their custody twice in a two-month period. Gary McConnell, like the instant petitioners, had been placed at Manteno by the Illinois Department of Mental Health and Developmental Disabilities (DMHDD) after being committed to the custody of DMHDD following acquittal of a felony by reason on insanity. Roush and Manteno were further charged with impeding the orderly administration of justice under section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4) by their action or lack of action in the treat-

ment of McConnell.

After a hearing, the trial court found the defendants Roush and Manteno guilty of indirect criminal contempt of court. Roush was fined $1500 and placed under court supervision. This punishment was stayed pending separate appeal.

Then the court on its own initiative, without any such request by the State, issued the following order concerning future procedures to be observed at Manteno.

"1. No NGRI patient be given unsupervised grounds passes by the Manteno Mental Health Center without first giving the Court from which the patient was referred and the State's Attorney's Office one week's notice of its intention. During this time the Court and State's Attorney may take any appropriate action to oppose the pass.

2. NGRI patients at Manteno Mental Health Center will be confined in a secure area.

3. No NGRI patient at Manteno Mental Health Center will be allowed in any unsecure area on the above premises without giving one week's notice of such action to the Court from which the patient was referred, the State's Attorney's Office, and the victim, if any, on the charge the patient had been found NGRI.

4. The containment of all NGRI patients at Manteno Mental Health Center shall be deemed a priority equal to the rehabilitation of such patients."

The above order was entered verbally on September 1, 1981. That same day, Roush and Manteno complied with the order and transferred all the petitioners as NGRIs to the maximum security unit at Manteno. The petitioners were also denied the right to leave that unit unaccompanied.

On September 8, 1981, the formal written order was entered. On that day, counsel for the petitioners appeared before the court and filed their motion to intervene and a motion for reconsideration of the September 1 order. Following oral argument, both the motion to intervene and the petition for reconsideration were denied. The petitioners' motion for stay pending appeal was also denied. The petitioners then filed this notice of appeal.

In answer to the first issue on appeal, section 26.1(1)(b) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 26.1(1)(b)) allows intervention as a matter of right "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order of judgment in

the action." The interest must be direct and substantial and it must also be a specific, enforceable and recognizable right greater than the interest of the general public in the subject matter of this suit. (*Adams v. County of Cook* (1980), 86 Ill. App. 3d 68, 407 N.E.2d 1018; *Caterpillar Tractor Co. v. Lenckos* (1979), 77 Ill. App. 3d 90, 395 N.E.2d 1167.) A basic tenet of intervention statutes is that they are remedial and should be liberally construed. *Adams v. County of Cook* (1980), 86 Ill. App. 3d 68, 407 N.E.2d 1018; *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136.

■ We believe that whether or not the NGRIs interest in this suit is characterized specifically as a right as the NGRIs claim or as a privilege as the State contends, it is recognizable and greater than the interest of the general public in the subject matter of this suit. In addition, their interest is direct and substantial because the outcome of this suit will determine whether they are to be kept under constant lock and key or whether they can have some freedom of the grounds in the facility where they reside. Thus, applying a liberal construction to this interest, we believe that the NGRIs do possess the type of interest that was envisioned in section 26.1(1)(b) and thus they should have been allowed to intervene.

The NGRIs also raise a number of issues to suggest that the court was in error in issuing an injunction that mandated procedures which Roush, his administrators and staff must observe in regard to the NGRIs. We believe that the court had jurisdiction but that it ought not to have exercised that jurisdiction. (See 1 Pomeroy, Equity Jurisprudence sec. 131, at 179 (1941); McClintock, Equity sec. 40, at 98 (2d ed. 1936).) Apparently, the court was motivated to issue the order against the agency of the State because it found that the agency was not being properly administered. At issue, however, is not whether the agency was indeed properly administered but rather what is the proper relationship between the court and an agency under those circumstances.

Sometime ago, the Illinois Supreme Court enunciated the governing law pertaining to the relationship between discretionary acts by public officials and the availability of equity jurisdiction. In *Trustees of Schools v. School Directors of District No. 2* (1901), 190 Ill. 390, 60 N.E. 531, the court considered a matter involving the superintendent of schools. The court stated:

> "He is vested with discretion to determine what is best for the people and the cause of education. The rule is well established that when public officers are so invested with discretionary powers, a court of equity will not interfere to control or review

the exercise of the power unless fraud, corruption, oppression or gross injustice is plainly shown. A court of equity cannot sit as an appellate tribunal to review the exercise of judgment where there is no gross abuse of the power, and the law does not contemplate any supervisory power in the court for the purpose of correcting errors of judgment." 190 Ill. 390, 393, 60 N.E. 531, 532; see 30 C.J.S. *Equity* sec. 65 (1965), 21 C.J. *Equity* sec. 137 (1920).

In *Sheridan v. Colvin* (1875), 78 Ill. 237, the supreme court said that a court of chancery has no jurisdiction to interfere with the public duties of any department of government, except under special circumstances, and where necessary for the protection of rights of property. These principles have been applied more recently in varying factual situations. See *Bongi Cartage, Inc. v. City of Chicago* (1961), 33 Ill. App. 2d 433, 179 N.E.2d 463 (the court refused to enjoin the city of Chicago purchasing agent from cancelling subcontracts because it was within his discretion to cancel them); *Mister Softee of Illinois, Inc. v. City of Chicago* (1963), 42 Ill. App. 2d 414, 192 N.E.2d 424 (the court refused to enjoin enforcement of a city anti-noise ordinance because it was within the discretion of city authorities to determine whether the noise level exceeded the standard of the ordinance); *Rocke v. County of Cook* (1978), 60 Ill. App. 3d 874, 377 N.E.2d 287 (the court refused to enjoin public officials from improving an existing highway because there was no abuse of discretion or oppressive exercise of power).

In the instant cause, no fraud, corruption, oppression, gross injustice or gross abuse of power was alleged. Also, an institution which would allow NGRIs to escape and is alleged to be poorly administered does not equate with the kind of fraud, corruption, oppression, gross injustice or gross abuse of power which is necessary for equity jurisdiction. Therefore, we see no reason for the court to have assumed equity jurisdiction in this matter.

The order of the circuit court of Cook County denying intervention is reversed. The order of the circuit court of Cook County mandating certain action on the part of Roush and Manteno is also reversed.

Reversed.

LINN, J., concurs.

JOHNSON, P.J., dissenting:

I respectfully dissent from the ruling of this court.

The majority states: "We believe that the court had jurisdiction but that it ought not to have exercised that jurisdiction." I believe that the hue and cry from the public over the situation of NGRIs escaping and committing other crimes mandated some action by the court. In my opinion, the action of the court was warranted in this case.

For the foregoing reason, I would affirm the trial court.