THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.*
DR. PAUL SCHYVE, Acting Director, Illinois State Psychiatric Institute, *et al.*, Respondents-Appellants.

First District (4th Division)   No. 82—1719

Opinion filed February 10, 1983.

Louis B. Garippo, of Chicago, for appellants Dr. Paul Schyve and Illinois State Psychiatric Institute.

Tyrone C. Fahner, Attorney General, of Springfield (Maureen Mudron, Special Assistant Attorney General, of counsel), for appellants Dr. Ivan Pavkovic and Department of Mental Health and Developmental Disabilities.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Richard T. Sikes, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Contempt proceedings were brought against Dr. Paul Schyve, Acting Director of the Illinois State Psychiatric Institute (ISPI), and ISPI for allowing Gary McConnell to escape from ISPI. McConnell had been involuntarily committed to the Illinois Department of Mental Health and Developmental Disabilities (DMHDD), after being found not guilty by reason of insanity (hereinafter NGRI). While the contempt hearing was going forward, the State subpoenaed Dr. Ivan Pavkovic, Director of the DMHDD, to testify regarding the contempt charge and also to testify regarding the escape of another NGRI. Dr. Pavkovic testified on June 24, 1982. On the same day, the trial court, in response to a petition by the State, issued the following order. The court found:

"That the Illinois Department of Mental Health has reck-

lessly allowed numerous NGRI residents to escape from its custody over the past several months.

That the Illinois Department of Mental Health has violated the constitutional rights of numerous NGRI residents to adequate and humane care and treatment.

That the Illinois Department of Mental Health by and through its Director, Ivan Pavkovic has failed to comply with Illinois Revised Statute, 1981, ch. 38 Sec. 1005—2—4.

It is Ordered:

1. That the Director of the Illinois Department of Mental Health immediately identify those NGRI residents who are dangerous to others.

2. That the Director of the Illinois Department of Mental Health immediately separate such persons from the general population and place them in a secure area.

3. That the Illinois Department of Mental Health give ten days written notice to the Court from which an NGRI resident is committed and to the State's Attorney of Cook County in which the Court is located whenever it plans to transfer an NGRI resident to a less secure area. The notice shall include not only the fact that the resident is being transferred but also that he or she will be in a less secure area and the reasons for the intended action and the facts upon which those reasons are based.''

The court characterized the above order as a temporary restraining order and issued it while the contempt proceedings were still pending.

On July 8, 1982, Dr. Schyve and several NGRI intervenors (the defendants) moved to vacate the order on the grounds that the court lacked the jurisdiction and authority to take such actions; that the TRO which the court issued did not meet the statutory requirements for such relief; and that the court's actions were an unconstitutional encroachment upon executive authority. Without discussion, the court denied the defendants' motion to vacate.

On appeal, the defendants challenge the court's jurisdiction to issue such a comprehensive order which allegedly involves an unconstitutional encroachment upon executive authority. The State defends the court's jurisdiction to issue such an order claiming that the court has general supervisory power over the defendants pursuant to statute, that the court has equity jurisdiction to issue such a comprehensive order and that the order is in fact a writ of *mandamus*.

■ The State's first defense of the court's jurisdiction to issue the order in the instant action rests upon its contention that the trial

court has the authority to issue such an order pursuant to its general supervisory powers over "Proceedings after acquittal by reason of insanity." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—2—4.) Under this section, the court is given the following supervisory powers relating to NGRI's and the DMHDD. The court can order the involuntary admission of NGRI's to the DMHDD; the court can require the Director of the DMHDD to create a treatment plan for each NGRI and file it with the court. The court can direct the DMHDD not to permit a NGRI to be at large in the community unless in accordance with the treatment plan; the court can order the DMHDD to discharge a NGRI. However, this statute does not empower the court with general supervisory powers over the DMHDD as the State claims. Neither does the statute specifically empower the court to require the DMHDD to identify those NGRI residents who are dangerous to others; to separate such persons from the general population and place them in a secure area; or to give 10 days written notice plus a reason to the court and to the State's Attorney whenever a NGRI is transferred to a less secure area. Therefore, we believe that the court overstepped its supervisory powers under this statute in issuing this comprehensive order. See also *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187.

■ The State next contends that the court had jurisdiction to issue this order by virtue of the court's equity jurisdiction. We have addressed ourselves specifically to the limits of a court's equity jurisdiction in *People v. Roush* (1982), 111 Ill. App. 3d 618. *Roush* is a case which we find to be indistinguishable from the instant cause. There the trial court issued an order mandating specific procedures to be followed in regard to NGRI's by the Director of the Manteno Health Center and Manteno. We held in *Roush* that the trial court had equity jurisdiction to enter the order but that it ought not to have exercised that jurisdiction. In *Roush*, we concluded that equity jurisdiction should only be assumed over the discretionary acts of public officials in the presence of fraud, corruption, oppression, gross injustice or gross abuse of power. Furthermore, quoting from *Roush*, "an institution which would allow NGRI's to escape and is alleged to be poorly administered does not equate with the kind of fraud, corruption, oppression, gross injustice or gross abuse of power which is necessary for equity jurisdiction." (111 Ill. App. 3d 618, 622.) In *Roush*, no such factors were alleged. Therefore, we held that there was no reason for the court to exercise its equitable powers. Similarly in the instant case, no such factors were alleged. Therefore, we hold there was no reason for the court to issue an order which interferes with the public

duties and discretionary acts of Schyve, ISPI, Dr. Pavkovic or the DMHDD. See also *In re Washington* (1976), 65 Ill. 2d 391, 359 N.E.2d 133 (the circuit court had no power to enjoin certain practices of the Department of Corrections where the effect was to establish department procedures and guidelines for care).

The State further argues that a court has equity jurisdiction to issue such a comprehensive order when the civil and constitutional rights of citizens are imminently in danger. The State claims that the recklessness of Schyve and ISPI in allowing McConnell to escape has endangered the constitutional rights of NGRI patients to receive proper treatment and the constitutional rights of the public at large to be free from any danger posed by the escapees.

The State's first constitutional argument depends on the theory that if such patients are allowed to escape, they cannot receive proper treatment. The constitutional right to adequate treatment was set forth in *Donaldson v. O'Connor* (5th Cir. 1974), 493 F.2d 507, *vacated* (1974), 422 U.S. 563, 45 L. Ed. 2d 396, 95 S. Ct. 2486. *Donaldson* is cited in *American Federation of State, County & Municipal Employees v. Walker* (1975), 27 Ill. App. 3d 883, 327 N.E.2d 568, a case heavily relied upon by the State to support its argument that when constitutional rights are violated, judicial intervention is required. *Donaldson* held that a patient who is being incarcerated for treatment has a due process right to receive such treatment as will help him to be cured or to improve his mental condition.

■ The United States Supreme Court in vacating the Court of Appeals decision in *Donaldson* refused to give support to a constitutional right to treatment. The court stated: "We have concluded that the difficult issues of constitutional law dealt with by the Court of Appeals are not presented by this case in its present posture. Specifically, there is no reason now to decide whether mentally ill persons dangerous to themselves or to others have a right to treatment upon compulsory confinement by the State." (422 U.S. 563, 573, 45 L. Ed. 2d 396, 405, 95 S. Ct. 2486, 2492.) Since at present, there is no constitutionally guaranteed right to treatment, we fail to see how the State can support its claim that if patients are allowed to escape, they cannot receive their constitutional right to treatment.

■ The State's second constitutional argument depends on a theory of law that a court can assume equity jurisdiction to protect the constitutional rights of the public at large. The State specifically contends that the constitutional rights of the public at large are being infringed because they are presented with a dangerous situation posed by escaping NGRI's. Our response to this contention is two-fold. We

have searched the record and can find no factual basis for this claim. In addition, the law is well established that a court of equity will not act to determine abstract questions. (30 C.J.S. *Equity* sec. 14 (1965).) "Courts of equity should and must decide cases as private, not as public, as real, not as abstract, controversies, and determine them accordingly." (30 C.J.S. *Equity* sec. 14, at 802 n.33 (1965); see *O'Malley v. Bank of Montreal* (1953), 349 Ill. App. 224, 110 N.E.2d 473.) Applying this rule of law to the instant facts, the State must do more than just speculate that the constitutional rights of others are being infringed before equity jurisdiction is appropriately exercised.

The State's final argument is that the court's order sounds in *mandamus*. According to the State, a writ of *mandamus* will issue against a public officer or governmental body to compel the performance of a mandatory or clear public duty and the appellants here have a clear statutory duty to keep committed NGRI patients confined. The State contends that all the elements for a writ of *mandamus* are met because the trial court's order does no more than direct the DMHDD to comply with its already established duties. The defendants respond that this is not a *mandamus* because the trial judge specifically characterized his order as a "temporary restraining order."

■ We believe that the defendant's response to the State's contention is persuasive in regard to the proper characterization of the court's order. Furthermore, we do not believe that the court's order was in fact a writ of *mandamus*. Unlike an injunction, a *mandamus* is used only to compel a specific kind of behavior—compliance with a ministerial duty of an office. It does not issue to compel action that is discretionary. (Dobbs, Remedies sec. 2.10, at 112 (1973); *Stafford v. Bowling* (1980), 85 Ill. App. 3d 978, 407 N.E.2d 771.) In the instant case, the court did more than issue a general order to the defendants to perform their ministerial duty. The order went so far as to prescribe the exact steps that the defendants must take to execute this duty. Therefore it seems clear that although the court had the statutory authority to issue a *mandamus* to direct the appellants to keep the NGRI's incarcerated, the court did not possess the authority under the guise of a writ of *mandamus* to direct the manner in which this order should be carried out.

For the above reasons, we reverse the order of the trial court.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.